**Billy Ray WALLACE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–82–006–CR.**

Court of Appeals of Texas,
Texarkana.

Feb. 18, 1986.

Rehearing Denied April 2, 1986.

Jim Vollers, Austin, for appellant.

Frank Long, Dist. Atty., Sulphur Springs, for appellee.

GRANT, Justice.

Billy Ray Wallace appeals his conviction of capital murder and the trial court's imposition of a life sentence when the jury could not reach a verdict at the punishment stage.

Wallace raises issues concerning the trial court's failure to suppress tape recordings and the admission of the tape recordings into evidence, the introduction of Wallace's statements and the transcript of a prior proceeding, the failure of the trial court to submit a requested charge on the voluntariness of the confession, the sufficiency of the evidence, the admission of the testimony of Wallace's cellmate, the excusing members of the venire out of order, the denial of the motion for change of venue, the bolstering of a State's witness, the admission of photographs of the exhumed body, the imposition of the life sentence by the court when the jury failed to reach a verdict on punishment, the overruling of the challenge to the array, the improper excusing of jurors, the granting of State's challenge for cause regarding prospective jurors, and the granting of a motion in limine filed by the State regarding a tape recording.

Wallace was arrested on December 6, 1979, and charged with the murder of his wife, Janyth Kay Wallace. He waived indictment and was convicted on his plea of guilty to the offense of murder and sentenced to life in prison pursuant to a plea bargain agreement. He then filed a writ of habeas corpus, and the Texas Court of Criminal Appeals in December of 1980, ordered the information dismissed because of defective wording. At this point, Wallace refused the plea bargain arrangement and insisted on his right to a jury trial. The case was transferred on a change of venue from Hopkins County to Delta County. Jury selection ran from October 5, 1981, to November 11, 1981. The jury found Wallace guilty of the offense of capital murder. At the punishment stage, the jury was unable to reach a verdict to Special Issue No. 2. Pursuant to Tex.Code Crim.Proc.

Ann. art. 37.071 (Vernon Supp.1986), the court assessed punishment at life imprisonment.

Janyth Wallace disappeared from her home in Sulphur Springs, Texas, on July 12, 1979. Her car was found abandoned near Rockwall, Texas, with the keys in the ignition and her purse in the car. Law enforcement officials investigated what they believed might be a kidnapping. Approximately three weeks after her disappearance, the Wallace home burned. Jesse Shaw, who was an employee of the Wallace dairy, was arrested for arson. He made an oral confession as to the arson and his part in the murder of Janyth Wallace. He then led the authorities to a shallow grave in rural Hopkins County where he had buried the body of Mrs. Wallace. After making his admissions, Shaw talked to Wallace by telephone from the office of the district attorney, and this conversation was recorded. Shaw was then fitted with a recording device and went to Wallace's home where an additional conversation with Wallace was recorded. These recordings and the allegations by Shaw that Wallace had hired him to kill Mrs. Wallace and later promised additional compensation to him for the burning of the Wallace house to destroy the evidence of the scene, led to the arrest of Wallace for the alleged murder of his wife.

We initially consider the State's cross point urging that improper granting of an out-of-time notice of appeal by this Court deprived us of jurisdiction in this cause. This is based upon the filing by Wallace of his initial notice of appeal in the trial court before the court overruled his motion for a new trial. Wallace thereafter filed a motion with this Court pursuant to Tex.Code Crim.Proc.Ann. art. 44.08(e) (Vernon Supp. 1986). Under that provision, this Court, for good cause shown, may permit an appellant to give notice of appeal after the expiration of the time period specified by the Act. The motion was granted by this Court on April 13, 1982. The State's motion for rehearing was overruled on April 27, 1982, and the Court of Criminal Appeals denied the State's petition for discretionary review on June 2, 1982. The State's cross-point is overruled, and we will now consider the grounds of error brought forward by Wallace in his appeal.

■ Wallace contends in his first ground of error that the trial court erred in overruling his motion to suppress tape recordings which were made in violation of the United States Constitution, the Texas Constitution, and Supreme Court of Texas, Rules Governing the State Bar of Texas art. XII, § 8 (Code of Professional Responsibility) DR 7–104 (1973). The recordings were conversations between Jesse Shaw and Wallace made without the consent of his alleged attorney. During the arson investigation prior to these recordings, Wallace had been represented by counsel and invoked the fifth amendment before the grand jury. However, at that time, Wallace had not been charged with murder and had not indicated that he was represented by counsel as to the murder charge. Wallace was not in custody when the conversation was recorded. In the case of *Pannell v. State*, 666 S.W.2d 96 (Tex.Crim.App. 1984), the court held that disciplinary rules are not laws of the State as contemplated by statute which bars the admission of evidence obtained in violation of State law. The *Pannell* case differs from the present case in that it involved a waiver of counsel. The present case does not contain such a waiver, but the emphatic language as to the effect of disciplinary rules would not be altered by this factor. Furthermore, such recordings did not violate Wallace's fifth amendment rights under the United States Constitution, nor do they violate Article I, § 10 of the Texas Constitution or Article 38.22 of the Texas Code of Criminal Procedure. The first ground of error is overruled.

■ In his second, third, and sixteenth grounds of error, Wallace contends that the court erred in admitting the tapes into evidence because the proper predicate was not made to establish the authenticity and correctness of the recordings. Specifically, he argues that there was no showing that

changes, additions, or deletions had not been made or that the testimony was voluntarily made without any kind of inducement. These requirements are set forth as part of a seven-pronged predicate in *Cummings v. Jess Edwards, Inc.*, 445 S.W.2d 767 (Tex.Civ.App.-Corpus Christi 1969, writ ref'd n.r.e.). They were applied to criminal trials as well as civil cases in *Edwards v. State*, 551 S.W.2d 731 (Tex.Crim.App.1977). However, the court in the *Edwards* case provides that some of the requirements can be inferred from the testimony and need not be shown with the same particularity required for the admission of other mechanically acquired evidence.

The testimony indicates that Shaw was observed during the recording of one telephone conversation; that he was equipped with the same tape recorder loaded with a fresh tape before going to the Wallace house; that he was observed arriving at the Wallace residence and going into the front door of the house and leaving the house approximately thirty minutes later; that he was seen getting back into his car; that he was followed back to the district attorney's office; that the house had been under observation during the entire time that Shaw was in the house; that when Shaw returned to the district attorney's office the tape was immediately placed back in the presence of law enforcement officers; that the conversation on the tape lasted thirty minutes and twenty-one seconds, and that the tape had been kept in the custody of the district attorney's office and no changes had been made by anyone to the tape. Three witnesses testified that they were familiar with the voices of Jesse Shaw and Billy Ray Wallace and that they recognized those voices as being the same as were on the tape. We find that there was sufficient evidence for reasonable inferences of the authenticity and correctness of the recording and that no changes, additions, or deletions were made.

■ Wallace complains that there was no testimony by any person who was a contemporaneous witness to the conversation. As the court stated in *United States v. Bright*, 630 F.2d 804 (5th Cir.1980), "While it is admittedly better to have a tape recording authenticated by witness who was privy to the conversation as the tape was made, we recognize that is not always possible." The predicate for the introduction of recordings does not require the testimony of one present at the time of the recording if the necessary predicate can be established by other means.

■ Wallace argues that the recording is inadmissible because the statements by Shaw on the tape are not shown to be voluntary. An accomplice's recorded statements do not have to be proved to be voluntary for admitting a recording into evidence when the relevant statements on the tape are those of the defendant. *Quinones v. State*, 592 S.W.2d 933 (Tex.Crim. App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). A review of the recorded statements in the present case reveals that the incriminating statements on the tape were those made by Wallace.

■ Wallace further argues that the admission of the tape recordings denied him his right to confront and cross-examine Shaw. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the court held that it is improper to use the confession of a co-defendant to inculpate the defendant in their joint trial where the co-defendant does not take the stand. In the case at bar, the jury was given qualifying instructions by the court that they could consider Shaw's statements only to put the conversations between Shaw and Wallace in context. This case presents no *Bruton* problem of denial of a right to confrontation by use of the tapes, because the inculpating statements on the tape were made by Wallace, not by Shaw. Grounds of error two, three, and sixteen are overruled.

■ In grounds of error four, five, six, and seventeen, Wallace contends that the

trial court erred in allowing his judicial confession at a prior proceeding and related documents into evidence. Wallace had agreed at his first trial to plead guilty to a charge of murder in exchange for the State's promise that no case on capital murder would be presented to the grand jury and that no charges would be brought as to any other related felonies. The plea of guilty is separate and distinct from the judicial confession used to support the plea. *Cammack v. State*, 645 S.W.2d 866 (Tex. App.-Dallas 1983, pet. ref'd). The judicial confession is not involuntary merely because it was made as the result of a plea bargain. *Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976). Wallace was called by his own attorney at the plea proceedings. There is no indication that his testimony was required as part of the plea bargain, or that the State's recommendation was conditioned on Wallace's testifying. He waived the privilege against self-incrimination, and his testimony may be used against him at a subsequent trial of the same case. *Chavez v. State*, 508 S.W.2d 384 (Tex.Crim.App.1974). An admission of guilt by the defendant during a plea of guilty in a former trial may be used even if the indictment in the original trial was defective in some particular, or as in this case, a defective information. *Rodriguez v. State*, 130 Tex.Crim.R. 438, 94 S.W.2d 476 (1936). Grounds of error four, five, six and seventeen are overruled.

In two grounds of error, Wallace next asserts that the trial court erred in failing to submit a requested charge as to the voluntariness of the judicial confession. He requested a charge to the effect that if the jury believed that the judicial confession was made by the defendant on the promise that the State would not seek a capital murder indictment or seek the death penalty, then the jury would not consider the statement for any purpose.

■ This proposed charge contained a misstatement of the law. Pleading guilty to avoid the possibility of a death sentence is constitutionally permissible under *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). As discussed above, this plea bargain did not taint the judicial confession. A jury should not be charged on a defensive theory that is contrary to the law. *Turpin v. State*, 606 S.W.2d 907 (Tex.Crim.App.1980). Grounds of error seven and eight are overruled.

■ In his ninth ground of error, Wallace contends that the evidence was insufficient to sustain the verdict of capital murder. We find that Wallace's judicial confession, the taped conversation between Wallace and Jesse Shaw, the statements made by Wallace to Phillip Baker, the medical testimony as to the cause of death, and other surrounding circumstances constitute sufficient evidence to sustain the jury's verdict. Ground of error nine is overruled.

■ Next, Wallace claims that the trial court erred in allowing the testimony of Phillip Baker. Baker, a fellow prisoner, testified as to a conversation with Wallace in the penitentiary while Wallace was confined after the first trial of this cause. According to Baker, Wallace approached him with an offer of $5,000.00 to kill Jesse Shaw and $15,000.00 to kill the district attorney. Baker testified as to statements made by Wallace involving Wallace in the death of his wife. An admission of guilt to a cellmate while in custody is admissible for proof of guilt. *Chambliss v. State*, 647 S.W.2d 257 (Tex.Crim.App.1983). The statements to Baker were not the result of a custodial interrogation. *May v. State*, 618 S.W.2d 333 (Tex.Crim.App.1981). The fact that the conversation occurred while Wallace was confined under the first conviction, which was later set aside does not render the statements inadmissible.

■ Wallace also attacks the indictment, which alleges alternative means of murder. The pertinent part of the indictment reads as follows:

Jesse Shaw did ... knowingly and intentionally cause the death of ... Janyth

Kay Wallace for remuneration and promise of remuneration by choking her ... with his ... hands, and by other manner and means unknown to the Grand Jury.

It is proper to allege alternative means by which a murder is committed. It is only necessary to prove one of the means by which the murder was committed, and it is proper to charge only on the means which is supported by the evidence. *Evans v. State*, 622 S.W.2d 866 (Tex.Crim.App.1981). The testimony of Baker and the autopsy are sufficient evidence of strangulation.

■■■ Wallace cites *McIver v. State*, 555 S.W.2d 755 (Tex.Crim.App.1977) and *Jones v. State*, 132 Tex.Crim.R. 216, 104 S.W.2d 42 (1937), for the proposition that the State had the burden of proving that the death was caused by manner and means unknown to the grand jury. Neither of those cases had an indictment which alleged alternatively the manner and means of death. Since the evidence in the present case supported the first alternative and the second alternative was not submitted to the jury, it was not incumbent upon the State to make proof concerning the portion of the indictment relating to an unknown means of death. Ground of error ten is overruled.

■■■ Wallace next urges that the trial court erred in excusing some members of the venire out of order. At the beginning of the voir dire, the trial court asked for those jurors who felt they had a fixed opinion as to the guilt or innocence of the defendant to identify themselves. The court then excused the remainder of the panel until a later time and proceeded to question the twenty-three panel members who indicated they had a fixed opinion. Wallace complains that these twenty-three prospective jurors were examined out of order.

Prior to the commencement of interrogation by counsel in a capital case, the court is allowed to propound to the entire jury panel questions which may include the presumption of innocence and their opinion as to the defendant's guilt or innocence. Such questioning does not constitute a denial of defendant's right to voir dire prospective jurors separately. Tex.Code Crim.Proc. Ann. art. 35.17(2) (Vernon Supp.1986); *Esquivel v. State*, 595 S.W.2d 516 (Tex.Crim. App.1980).

Tex.Code Crim.Proc.Ann. art. 35.20 (Vernon 1966) requires that the names of such persons shall be called in the order in which they appear upon the list furnished the defendant. While the court erred in allowing the individual questioning out of order, all of the disqualified veniremen were those who had formed an opinion as to the defendant's guilt.[1] The remaining two veniremen were put back in the regular order for questioning by the attorneys. We find that this procedure was not calculated to harm the defendant, and that it does not constitute reversible error. Ground of error eleven is overruled.

■■■ Wallace contends that the trial court erred in denying his motions for change of venue from Delta County. A venue change question is one of constitutional dimension, and the test to be applied is whether outside influences affecting a community's climate of opinion as to a defendant are inherently suspect. *Nethery v. State*, 692 S.W.2d 686 (Tex.Crim.App.1985); *Adami v. State*, 524 S.W.2d 693 (Tex.Crim. App.1975). Where an applicant seeking a change of venue fails to meet his burden of proving the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful, the trial judge does not abuse his discretion in denying the change of venue. *Nethery v. State, supra* at 694; *Ussery v. State*, 651 S.W.2d 767 (Tex.Crim.App.1983).

Wallace called seven media witnesses for the purpose of introducing into evidence

---

1. Twenty held a fixed opinion that the defendant was guilty, and one believed him to be not guilty.

copies of news reports related to both his first trial in 1979 and his second trial in 1981. The coverage by the media constituted fair and non-inflammatory reporting of a matter of general interest to the public. His three remaining witnesses were the owner of a drive-in grocery in Cooper and two men who had taught school with John Byers, one of Wallace's attorneys. These witnesses testified that Wallace could not receive a fair and impartial trial in Delta County because of the general publicity the case had received, but none could pinpoint any specific news coverage which they considered to be inflammatory. One of the former teachers testified on cross-examination that he believed that a fair and impartial jury could be selected in Delta County in spite of the case publicity. The State called a justice of the peace of Delta County who testified that in his opinion there was no anti-Wallace sentiment pervading the county.

There is no requirement that jurors be totally ignorant of the facts and issues involved, given the widespread and diverse methods of communication today. A major criminal case can be expected to arouse public interest in the area such that scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

A significant portion of the media coverage in this case appeared in the area newspapers or was broadcast immediately after the murder and at the time of the first trial. Almost two years elapsed between the first trial in 1979 and the second trial in 1981. Such passage of time soothes, softens or erases community sentiment. *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Wallace has not shown that outside influences affected the community's climate of opinion. He does not contend that he was forced to take an objectionable juror, nor did he use all of the peremptory challenges available to him. As did the court in *Patton,* we conclude that the voir dire testimony and the record of publicity do not reveal the "wave of

public passion" which the Court found in *Irvin, supra,* that would have made a fair trial unlikely by the jury that was impaneled as a whole. Wallace did not prove the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury was doubtful. Absent that showing, the trial judge was within the limits of his discretion in denying the change of venue. We hold that the outside influences affecting the community's climate as to this appellant were not inherently suspect. *Nethery v. State, supra.* Grounds of error twelve and thirteen are overruled.

Wallace next contends that the trial court erred by overruling his objection to unsworn testimony by the district attorney expressing an opinion that the witness Baker told the jury the truth. During argument, appellant's counsel stated with regard to the witness Baker, "Why should I cross examine him when I don't think he's a fit person for belief by anybody?" The prosecutor, in his closing argument, included the following remarks:

> See, because he says that Phillip Ronald Baker shouldn't be believed. That is what he thinks. Well, I believe in this case since July 12th of 1979, and folks, on the points he testified about I believed Phillip Ronald Baker told you exactly what happened.

It is improper for a prosecutor to vouch for the credibility of a witness during his argument, but where the argument in question was invited by the attorney for the appellant and was in reply to such invitation, no reversible error is shown. *Chapman v. State,* 503 S.W.2d 237 (Tex. Crim.App.1974); *Carter v. State,* 650 S.W.2d 843 (Tex.App.-Houston [14th Dist.] 1982), *aff'd on other grounds,* 650 S.W.2d 793 (Tex.Crim.App.1983). We find that the language of the prosecutor in this case was in response to the invitation of appellant's counsel and that no error was shown. Ground of error fourteen is overruled.

Wallace next claims that the trial court erred by allowing into evidence a

large number of black and white photographs and color slides showing exhumation of the victim's body. He argues that this evidence tended to inflame the jury and did not shed light on any contested issues of fact.

Photographs of the scene of the crime are admissible as an aid to the jury in interpreting the testimony adduced at the trial. If the photographs are competent, material and relevant to the issue on trial, they are not rendered inadmissible merely because they are gruesome or might tend to arouse the passions of the jury. If a verbal description of the body and scene would be admissible, a photograph depicting the same is admissible. The former Texas rule that gruesome photographs are not admissible unless they tend to solve a disputed fact issue has been overruled. *Martin v. State,* 475 S.W.2d 265 (Tex.Crim. App.), *cert. denied,* 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312 (1972).

Photographs of the decomposed remains of a murder victim are admissible into evidence. *Burks v. State,* 583 S.W.2d 389, 392 (Tex.Crim.App.1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1136 (1980). In any homicide, a photograph of the body of the deceased is probative. The issue is whether or not its probative value is outweighed by the prejudicial effect. *Garza v. State,* 695 S.W.2d 249 (Tex.App.-Corpus Christi 1985, no pet.). In this case, the court admitted four black and white photographs and eight color slides into evidence, each showing the process of exhumation of the victim's skeletal remains. Such evidence is useful as an aid to the jury in interpreting and understanding the testimony adduced at trial. *Smith v. State,* 683 S.W.2d 393 (Tex.Crim.App.1984).

Determination as to the admissibility of photographic evidence rests largely in the discretion of the trial judge. Based on the record, we find no abuse of that discretion by the trial judge in admitting the disputed exhibits into evidence. Wallace's fifteenth ground of error is overruled.

■ Wallace next contends that the court erred in overruling his motion for mistrial when the jury could not agree upon the answer to questions at the punishment stage. At trial, Wallace's counsel moved for mistrial on the ground that a mistrial declaration was mandated by Tex. Code Crim.Proc.Ann. art. 37.071 (Vernon Supp.1986), when the jury could not affirmatively answer both special issues in the sentencing proceedings in this capital murder case.

Prior to August 31, 1981, the court was empowered and required to impose a life sentence only in capital murder cases in which the jury returned a negative finding on any issue submitted under Article 37.-071. An amendment effective on that date mandated a life sentence in capital murder cases also when the jury was unable to answer any of the special issues submitted to it in the sentencing proceedings.

Wallace argues that, because the offense occurred in July, 1979, and the amendment to Article 37.071 was not effective until August 31, 1981, the imposition of a life sentence at his second trial in December, 1981, under the mandate of the amendment, was an ex post facto application of the statute and therefore prohibited by the United States and Texas constitutions.

In *Chalin v. State,* 645 S.W.2d 265, 271 (Tex.Crim.App.1982), the court said:

Ex post facto considerations come into play when legislation or judicial action detrimentally affects a person and the legislation or judicial action relates to acts of that person committed before the legislation came into force or before the judicial action occurred. *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). These considerations affect only substantive, not procedural, matters. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In other words, legislation and judicial action may not retroactively subject a person's action to criminal prosecution, see *Bouie v. Columbia,* supra, and may not retroactively subject criminal actions to a potentially more onerous punishment, see *Weaver v. Graham,* supra, but

may change the procedures by which it is determined whether a person has committed act, or what punishment is appropriate, see *Dobbert v. Florida,* supra.

In this instance, the amendment to Article 37.071 involved the method of determination of the appropriate punishment. Accordingly, there is no ex post facto effect. The change was procedural, not substantive. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Chalin v. State,* supra. Ground of error eighteen is overruled.

■ Wallace next urges that the court erred in overruling his challenge to the array and in refusing to allow him to present testimony that a significant number of qualified jurors were systematically excluded from the jury list of Delta County.

Tex.Code Crim.Proc.Ann. art. 35.07 (Vernon 1966) provides that each party may challenge the array only on the ground that the officer summoning the jury has willfully summoned jurors with a view to securing a conviction or an acquittal. In the instant case, Wallace challenged the array on the ground that, in violation of state law and the constitution, there had been a systematic exclusion of a significant number of qualified jurors merely because they had not registered to vote.

Wallace cites only Tex.Code Crim.Proc. Ann. art. 35.12 (Vernon Supp.1986), urging that it excepts registration to vote as a juror qualification. That article, however, relates to the mode of testing the qualifications of a juror after he has been sworn, and it does not establish the source of names from which the jury list is to be constituted nor the general qualifications for jury service. Tex.Rev.Civ.Stat.Ann. arts. 2100a, 2133 (repealed 1985, now included in Tex. Gov't Code Ann. §§ 62.011, 62.102 (Vernon 1986)).

■ Wallace failed to challenge the array on the ground permitted by Article 35.07. Moreover, even if his excluded evidence had been admitted, it would not have demonstrated purposeful and systematic exclusion of a cognizable group, in that a group of persons who choose not to register to vote does not constitute such a group. *Phillips v. State,* 654 S.W.2d 846 (Tex.App.-Dallas 1983, no pet.)

The constitutionality of the use of voter registration rolls from which to compile federal and state jury lists has been affirmed. *United States v. Arlt,* 567 F.2d 1295 (5th Cir.), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2250, 56 L.Ed.2d 412 (1978); *United States v. Carter,* 568 F.2d 453 (5th Cir.1978); *Phillips v. State, supra; Shelby v. State,* 479 S.W.2d 31 (Tex.Crim.App. 1972); *De La Garza v. State,* 650 S.W.2d 870 (Tex.App.-San Antonio 1983, pet. ref'd). Grounds of error nineteen and twenty are overruled.

■ By his next ground of error, Wallace contends that the court allowed the violation of Tex.Code Crim.Proc.Ann. art. 35.04 (Vernon Supp.1986) by improper exemptions from jury service and refusal to order attachment of veniremen excused by the court clerk. He maintains that the statute requires that claimed exemptions from jury service must be sworn to, and that jurors should not be excused except in open court unless affidavits showing grounds for exemptions are on file with the court. The two cases cited by Wallace were heard in 1920 and 1922 and construed the 1916 version of the Texas Code of Criminal Procedure. Article 35.04, as it existed at the time of the instant trial in 1981, permitted a person summoned as a juror to claim an exemption by filing a signed statement of the grounds before the date upon which he was summoned to appear.

Wallace also complains that the trial court denied his request for an attachment of those prospective jurors who were excused on the basis of exemptions for age and student status. An absent venireman may not be attached unless the defendant first shows that a person not authorized by law excused the prospective juror, *Porter v. State,* 623 S.W.2d 374 (Tex.Crim.App. 1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982); Tex.Code

Crim.Proc.Ann. art. 35.07, *supra*, or that a person willfully summoned jurors with a view toward securing a conviction or an acquittal. Tex.Code Crim.Proc.Ann. arts. 35.01, 35.07 (Vernon 1966). Moreover, the provisions for attachment in Article 35.01 are directory, not mandatory, and where the defendant fails to show an injury has occurred, the trial court's failure to grant a request for attachment is not an abuse of discretion. *Porter v. State, supra.* We find that the granting of exemptions to prospective jurors and the denial of attachments were in accordance with the applicable statutes. No abuse has been shown. Ground of error twenty-one is overruled.

■ Next, Wallace claims that the trial court erred in granting the State's challenge for cause as to prospective juror Criswell. The State's challenge was based on Criswell's response that he could not consider probation within the range of punishment in this case. Wallace contends that the State is not entitled to rely on a juror's refusal to consider probation under Tex. Code Crim.Proc.Ann. art. 35.16 (Vernon 1966 & Supp.1986).

Wallace had on file with the court an application for probation. Criswell responded to voir dire questioning by Wallace's counsel that he could not consider probation for the lesser included offense of murder. The prosecution thereafter challenged this potential juror for cause on the basis of his stated inability to consider the full range of punishment.

The State is entitled to challenge those who will not, or cannot, consider either the full range or the minimum punishment in a case. *Silguero v. State,* 654 S.W.2d 492 (Tex.App.-Corpus Christi 1983, pet. ref'd). In *Chambers v. State,* 568 S.W.2d 313 (Tex. Crim.App.1978), *cert. denied,* 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979), a capital murder case, the court held that the State could challenge for cause prospective jurors who expressed bias against the minimum punishment for a lesser included offense. The court reasoned that, under Tex. Code Crim.Proc.Ann. art. 35.16(b)(3) (Vernon 1966), lesser included offenses are "phase[s] of the law upon which the State is entitled to rely for a conviction or punishment."

Probation is within the range of possible punishment in the instant case for the lesser included offense of murder. Accordingly, the State's challenge for cause of prospective juror Criswell was proper. Tex. Code Crim.Proc.Ann. art. 35.16(b)(3), *supra.* Ground of error twenty-two is overruled.

Wallace next brings six grounds of error asserting that the court erred in sustaining the State's challenge for cause of prospective jurors Landers, Goldsmith, Blankenship, Burkhart, Stonaker, and Criswell.

Tex.Code Crim.Proc.Ann. art. 35.16 provides in pertinent part:

(a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense for any one of the following reasons:

. . . .

9. That he has a bias or prejudice in favor of or against the defendant;

. . . .

Bias exists as a matter of law when a prospective juror admits that he is biased for or against a defendant. *Anderson v. State,* 633 S.W.2d 851, 854 (Tex.Crim.App. 1982). Wallace urges that under Article 35.16, the State may challenge for cause only if the prospective juror's conclusion concerns innocence and that the defendant may challenge only if the juror's conclusion concerns guilt. He further suggests that by allowing these challenges, the court in effect gave the State additional peremptory challenges which allowed it to remove objectionable jurors on a ground under which it had not been harmed.

■ The State challenged prospective jurors Landers, Goldsmith, Blankenship, and Stonaker, each on the ground that the juror had formed a conclusion that the defendant was guilty. Such challenges are permitted under Article 35.16(a)(9). *An-*

*derson v. State, supra.* Juror Burkhart actually was challenged not by the State but by Wallace. Juror Criswell was the subject of ground of error twenty-two, previously considered and overruled. Regardless of the source of challenge, we find that appellant's contentions as to these grounds are without merit. Grounds of error twenty-three through twenty-eight are overruled.

In grounds of error twenty-nine through forty-one, Wallace complains of errors by the trial court in overruling his challenges for cause of prospective jurors, Brewer, Jackson, Collins, Abernathy, Freeman, and Partain; in restricting voir dire examination of Jackson, Abernathy, and Richardson; by improperly questioning jurors concerning the effects of pretrial publicity; and by jury selection procedures constituting a violation of due process under the Fourteenth Amendment to the United States Constitution.

Wallace has stated various reasons for his grounds of error twenty-nine through forty-one, but each deals essentially with the jury selection process. For that reason, we have grouped his grounds of error twenty-nine through forty-one for discussion.

Eleven of these thirteen grounds of error deal with the voir dire questioning of seven jurors: Brewer, Jackson, Collins, Abernathy, Richardson, Freeman, and Partain. In each case, Wallace's challenge for cause on various grounds was overruled, and in each case Wallace excused the juror peremptorily.

In ground of error thirty-seven, Wallace contended that the trial court erred in the form of questions put to prospective jurors. He listed twelve jurors whom he alleged had been improperly questioned by the court during voir dire. A review of the voir dire examination of the named twelve prospects indicates that three were excused for cause on the State's motion, three were excused for cause on the defendant's motion, two were excused peremptorily by the State, three were excused peremptorily by the defendant, and one was accepted by both sides. The following table summarizes the record as to these twelve jurors:

| Prospective Juror | Excused f/cause (State) | Excused f/cause (Def.) | Perempt (State) | Perempt (Def.) | Accepted (Both) |
|---|---|---|---|---|---|
| Clayton | X | | | | |
| Irvin | | | | X | |
| Sortwell | | X | | | |
| Criswell | X | | | | |
| Emerson | | X | | | |
| Thorp | | X | | | |
| Burkhart | | X | | | |
| Freeman | | | | X | |
| Stonaker | X | | | | |
| Davis | | | X | | |
| Partain | | | | X | |
| McGraw | | | | | X |

In ground of error forty-one, Wallace claimed that due process violations of the fourteenth amendment to the United States Constitution denied him the right to a trial before a fair and unbiased jury. He cited pretrial publicity, selection of the jury panel from a registered voters list, the manner and form of questioning of prospective jurors during voir dire by the court, and challenges for cause by the State upheld where the juror had a prejudice against probation.

Wallace admits that he did not use all of his available peremptory challenges, having one remaining at the close of jury selection. He urges, however, that the remaining challenges would not have cured the harm done him, and he concludes that it would have been "futile and foolish" for him to request additional peremptory challenges.

Wallace also complains of restrictions on voir dire. The conduct of the voir dire examination must rest largely within the sound discretion of the court. *Chambers v. State, supra* at 320. A study of the twenty-eight volumes of jury voir dire reveals that the trial court did not unreasonably restrict examination of prospective jurors, nor was there an abuse of discretion by the court.

All prospective jurors complained of by Wallace were excused by challenge for cause or peremptory challenge on the motion of either the State or the defendant. Each of the contentions in grounds twenty-nine through forty-one is affected by a common thread: Wallace did not exhaust

his peremptory challenges. Nor has he shown that he was forced to take even one objectionable juror. *Jones v. State*, 489 S.W.2d 618 (Tex.Crim.App.1973); *Clemons v. State*, 398 S.W.2d 563 (Tex.Crim.App. 1965); *Silguero v. State, supra.* Consequently, no reversible error is shown. Grounds of error twenty-nine through forty-one are overruled.

In two grounds of error, Wallace next contends that the trial court erred by refusing to allow his counsel to cross-examine witness Wells concerning the use of illegally seized evidence to obtain a confession from Jesse Shaw, and in refusing to allow him to elicit testimony from the same witness on the same subject for the purpose of a bill of exceptions.

Wells was a State witness who testified that he had been asked by members of the victim's family two or three weeks after her disappearance in July, 1979, for assistance in locating the victim's body. He did locate the body in late November or early December, 1979, after talking to Jesse Shaw, an employee of Wallace who had been jailed as a suspect in the arson burning of Wallace's residence after the disappearance of Wallace's wife.

Wallace's counsel requested permission from the court to cross-examine Wells regarding an alleged kidnapping of Wallace and as to his knowledge of a tape recording allegedly made of Wallace's voice during the kidnapping. Wallace wanted to show that the alleged tape, which he referred to as the "kidnap tape," was unlawfully taken from him and that, accordingly, any evidence thereafter gained from use of the tape would be the "fruit of the poisonous tree." At that point in the trial, there was nothing in the record to indicate whether Wallace had been kidnapped or that he had given any information that led to the discovery of the body of his wife.

The court permitted the defense to call Wells and to develop the desired line of questioning outside of the jury's presence. The State's attorney objected to many questions posed by Wallace's counsel on the grounds of hearsay or of relevancy and materiality. Most of the objections were sustained by the trial court.

Subsequently, the court permitted the defense to recall Wells and to question him again outside of the jury's presence about his knowledge of an alleged kidnapping of Billy Ray Wallace. The record refutes Wallace's claims that he was not permitted by the court to cross-examine witness Wells nor allowed to question him for the purpose of a bill of exceptions. Grounds of error forty-two and forty-three are overruled.

In ground of error forty-four, Wallace contends that the court erred in refusing to allow him to call witnesses to prove that certain evidence was inadmissible. Wallace specifically asked the court for permission to call Beth Moss and Delores Stubbs in order to show the existence of a conspiracy and the results thereof. He also offered to call District Attorney Chapman and to recall the witness Wells in order to show that a tape recording of Wallace was illegally made while Wallace was a kidnap victim. He further wanted to show that the tape was subsequently used to locate and obtain evidence against Wallace. At that time, the court denied the request. Later, however, Wallace did call Stubbs, Wells and Chapman as witnesses and questioned them outside of the jury's presence as to their knowledge of the alleged kidnapping of Wallace and of a tape recording supposedly made during the alleged kidnapping. Thus, the court did permit Wallace to call the three listed witnesses, although at a later time than initially requested. There was no showing that he could not also have called Moss. The complaint under this ground is without merit. Ground of error forty-four is overruled.

Next, Wallace contends that the trial court committed reversible error in refusing him permission to lay a proper predicate for objection to the admissibility of tape recordings on the basis of illegal seizure. Wallace argues that the tapes in question were secured by Jesse Shaw as an agent for District Attorney Jim Chapman after Shaw had given Chapman a confes-

sion. Chapman was called as a witness by Wallace's counsel and testified outside the jury's presence that his office was in possession of a tape recording which contained a reference to an "alleged kidnapping" of Wallace, the appellant. Chapman further testified that he received the tape after this alleged kidnapping was reported, that he was informed of an investigation by the Garland Police Department into that alleged kidnapping, and that he, defense attorney Byers, and witness Wells had talked to Jesse Shaw in the Hunt County jail on December 4, 1979. At that point, Chapman's objection to a question as to whether, during that meeting, he or someone in his presence had referred to the tapes in question or to conversations from the tape in question was sustained. The trial court denied defense counsel's request to make a bill of exceptions "at this time," and Wallace apparently bases this ground of error on that denial, contending that he was denied effective assistance of counsel, the right to confront and cross-examine witnesses, and the opportunity to show that the "kidnap tape" was illegally seized. Wallace also complains of the tape's later use to get a confession from Jesse Shaw, thereby tainting evidence subsequently received by the district attorney.

Although the court did not allow the question at the time it was asked, Wallace's counsel did not request permission of the court to make a bill of exceptions at any later time during the trial as to the matter complained of.

The district attorney, at another time while being questioned as a witness by Wallace's counsel, admitted that he had heard or had been informed that Wallace had been kidnapped for a few days. There was, however, no direct testimony or other evidence in the record to confirm the truth or falsity of the allegation of kidnapping as made by counsel for the appellant.

■ Evidence sought to be proved must appear in the record and the relevancy of that evidence must be demonstrated before it is admitted. *Rumbaugh v. State*, 629 S.W.2d 747 (Tex.Crim.App.1982). We have examined the extensive record in this case and we find insufficient evidence to sustain the allegation of kidnapping. An appellant, in order to perfect a bill of exceptions, must show in the record what the witness' answer to proposed questions would have been. *Clay v. State*, 505 S.W.2d 882 (Tex. Crim.App.1974); *Mosley v. State*, 172 Tex. Crim.R. 12, 352 S.W.2d 847 (1961). There was no proffer in this instance of what the expected answers to questions might have been which would tend to support appellant's contentions. The court may not speculate as to such answers. Ground of error forty-five is overruled.

■ In his forty-sixth and final ground of error, Wallace claims error by the trial court in its refusal to allow him to properly cross-examine the witness Delores Stubbs. Stubbs was being questioned by permission of the court for the purpose of a bill of exceptions so as to determine any involvement of the witness in a conspiracy to show bias or prejudice against appellant Wallace. Defense counsel, who had obtained permission to perfect a bill of exceptions for that purpose, attempted to ask Stubbs whether she knew a J.L. Courson, Jr., the person whom Wallace believed to be his kidnapper. Counsel further tried to question Stubbs as to what knowledge, if any, Stubbs had of a tape recording of Wallace alleged to have been unlawfully made during the kidnapping and allegedly used by the district attorney to elicit a confession from Jesse Shaw leading to the discovery of Mrs. Wallace's body. The State argued that defense counsel was assuming a fact not in evidence before either the court or the jury, and that defense counsel was going beyond the limits authorized by the court when it approved the bill of exceptions to test the bias and prejudice of this witness against Wallace.

The court indicated that it would permit the bill of exceptions within the limits as previously requested by the defendant and approved by the court on any involvement of Stubbs in a conspiracy to show bias or prejudice against the defendant. The court further stated that it would, at a later time,

and if other matters became material to the case, allow the defense counsel to either go into it or to make a bill of exceptions.

Counsel for Wallace made no further efforts to establish the materiality of his attempts to introduce evidence regarding a tape of Wallace which counsel claimed was made illegally during an alleged kidnapping and later allegedly used to elicit a confession from Jesse Shaw as to the location of Mrs. Wallace's body and the details of her death.

Wallace thus failed to pursue the avenue left open by the court to demonstrate the materiality of the matters he wished to place into evidence. His counsel was allowed to examine Stubbs extensively both on the first call by the State and again when recalled by the defense. The limitations imposed by the court appear to be reasonable and proper. Ground of error forty-six is overruled.

The judgment of the trial court is affirmed.