Joseph C. **AMERSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 09–91–251 CR to 09–91–253 CR.

Court of Appeals of Texas,
Beaumont.

Sept. 23, 1992.

Jack McCormick, Conroe, for appellant.

Peter C. Speers, Dist. Atty., Kathleen Hamilton, Asst. Dist. Atty., Conroe, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

The trial was held in the 221st District Court of Montgomery County with the Honorable Lee G. Alworth, Judge Presiding. The appellant was indicted for three separate offenses of delivery of a controlled substance. The appellant pleaded

not guilty. A jury trial was held and he was found guilty. Punishment was assessed by the trial court on September 11, 1991, and appellant was given fifteen (15) years confinement in the Institutional Division of the Texas Department of Criminal Justice for each offense. An enhancement paragraph was also in the indictment and the jury found it to be true.

The appellant brings forth this appeal on two points of error. The appellant argues in his first point of error the insufficiency of the evidence. In his second point of error he argues ineffective assistance of counsel.

■■■■ We know when a point has been specified as challenging the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234 (Tex.Crim.App.1984). To do this type of review we must look at the entire record, review all testimony to see whether or not such testimony was sufficient to support the jury's verdict. The appellant points out that the only element of the offense that is in dispute is the identity of the person delivering the rock cocaine on three separate dates. Appellant argues that the Court needs to review all the inconsistencies in the testimony of Officer Womack's testimony concerning all three deliveries and also review Officer Womack's testimony on the physical description of the deliverer as compared to the physical makeup of the appellant.

The record reflects that it was in the late summer or early fall of 1989 that Officer David Womack, who was employed with the Conroe Police Department, was assigned to the Montgomery County Narcotics Task Force. Officer Womack has been employed with the Conroe Police Department since 1980. In August of 1989, Officer Womack was working undercover in the Tamina Road area of south Montgomery County. The Narcotics Task Force was targeting Tamina Road area because the police department had received numerous calls about individuals who had stopped traffic to sell drugs along the roadside in front of an establishment known as The Rose Room on Tamina Road. The Rose Room was owned and managed by Aletha Tims, the appellant's mother, until 1991.

Also, a confidential informant was working along with Officer Womack. The informant was helping the officer to get into the community and to identify the perpetrators in the area.

### The First Transaction

On August 2, 1989, around 9:00 p.m., Officer Womack was working undercover and driving an unmarked vehicle east on Tamina Road. The informant was with him in the car. As the officer drove up to The Rose Room, the appellant was walking west on Tamina Road, also towards The Rose Room. Appellant stopped Office Womack and asked him what he was looking for. The officer told him that he was looking for a good "bolo", which is a street term for rock cocaine. The appellant told the officer to drive down a dirt road toward the Ecol gas station, which was about one-half block east of The Rose Room, and then the officer was to make a U-turn and come back and the appellant would be waiting with the rock cocaine. Officer Womack did as he was directed and handed the appellant a twenty-dollar bill. The appellant then got out of the officer's car and walked back toward The Rose Room. The officer complied with the instructions and the appellant handed him a rock cocaine. After the transaction had transpired, Officer Womack asked the appellant if he could come back and look for him again to which the appellant replied "yes". When the officer asked him who he should look for, the appellant answered "Joe". Then the officer and the informant drove off.

### The Second Transaction

On August 16, 1989, around 8:55 p.m., Officer Womack and the informant again were driving slowly in front of The Rose Room on Tamina Road whereupon they almost hit the appellant who was standing in the middle of the road. The appellant

came up to Officer Womack's window and asked the officer what he wanted. The officer said a "bolo". The appellant asked for another twenty. The appellant handed Officer Womack the rock and the officer handed him a twenty-dollar bill. The officer drove away from the area with the informant in the car and the appellant walked back toward The Rose Room.

### The Third Transaction

On August 23, 1989, around 9:02 p.m., Officer Womack and the informant were driving in the Tamina Road area and saw the appellant standing in front of The Rose Room. The officer called him by name and the appellant walked over to the officer's vehicle. He approached the vehicle on the passenger side and asked the officer and the informant what they wanted. Officer Womack told him that he needed another "bolo". The appellant got into the car with the officer and Smith and they drove back down a dirt road where they had been a few weeks earlier on August 2, 1989. The appellant got out of the car. He told them that he remembered them and he took a rock from his pocket. Officer Womack gave him a twenty-dollar bill for the cocaine and the appellant walked back toward The Rose Room.

Officer Womack testified to two different versions as to how he bought the cocaine during the August 2, 1989, transaction. In the first version the officer said the appellant reached into his pocket and handed him a rock and the officer handed the appellant $20. In the second version (on direct examination) Officer Womack recanted that testimony by saying that the appellant got into the officer's car, told the occupants to drive down to a dirt road, took the $20 from the officer, got out of the vehicle, instructed the officer to drive to a gas station near the freeway and come back and pick up the rock.

In the third transaction that happened on August 23, 1989, Officer Womack wore a body mike with which he recorded the conversation between Officer Womack, the appellant, and the informant. However, the tape was not clear as to audio and the tape only revealed the beginning conversation between Officer Womack and the appellant. The tape was played for the jury and it was approximately 45 seconds in length.

At the end of each of the transactions which Officer Womack testified to, he described the appellant as being the person in the courtroom who had sold him the cocaine and he also exhibited the specimens of each rock cocaine that he purchased as exhibits 1, 2, and 3. Exhibit 1 was the rock cocaine purchased on August 2, 1989; Exhibit 2 was the rock cocaine purchased on August 16, 1989; and Exhibit 3 was the rock cocaine purchased on August 23, 1989. Each of the three exhibits had been examined by Minh Nguyen, a chemist with the Department of Public Safety Crime Lab in Houston, who testified as to the amount of cocaine that was in each exhibit. Also, Exhibit No. 4 was admitted into evidence. This was the audio tape taken by Officer Womack which he recorded during the August 23, 1989, drug sale.

The other witnesses who testified at trial were the appellant's mother, Mrs. Aletha Tims, Eugene Amerson, Phillip Amerson and the appellant. These were the witnesses for the defense. Mrs. Tims testified that she was the owner and operator of The Rose Room from 1966 until 1991 and that there had been a drug problem on Tamina Road and around her establishment. She said that the Sheriff's Department of Montgomery County had sent out drug-sniffing dogs to check the businesses in that area for drugs. Mrs. Tims admitted during her testimony that there were a lot of individuals complaining about the drug problems on Tamina Road, particularly around her establishment. She denied that she ever was sued to close down The Rose Room, but testified that as a result of a conversation with the County Attorney of Montgomery County and because of the drug problem there, she chose to close her business voluntarily. She also admitted that her step-son, Forrest Adrian Tims, was sent to prison a few years before because he committed the offense of delivering drugs at The Rose Room.

Eugene Chester Amerson, the appellant's brother, testified that he was arrested in May of 1990 for the delivery of a controlled substance but these charges were dismissed. He described the appellant as being "tie-tongued".

Another brother, Phillip Amerson, also testified. He was thirty years old. He said that he was in the ministry and also helped run Landmark Chevrolet Corporation. He stated that in the summer of 1989, particularly the months of July and August, the appellant had been working 12 to 15 hours a day building a 7,000 sq. ft. church on Tamina Road for him. He said that he only went by his mother's business on a couple of occasions because he did not move in that circle anymore.

The appellant himself testified at trial and stated that he had lived with his mother on Tamina Road all his life, he had been arrested, convicted and placed on probation for theft but that the probation had been revoked because he had supposedly delivered some drugs. He was sent to prison. He testified that once he had a problem with drugs and alcohol, but that he had not touched drugs since his release from prison. The appellant strongly denied any involvement with the three transactions that transpired on the dates of August 2nd, 16th and 23rd of 1989 by saying that he was certain that he was at his brother's church on those dates each evening until 10:00 p.m. and sometimes until around 3:00 a.m. the following morning. He said that he had never actually seen anyone selling drugs near his mother's business and that he imagined that some of the people at The Rose Room had sold drugs, and he had seen some of the people smoke crack cocaine around the business. He said he did not hang out at The Rose Room. The appellant admits that his voice was distinct, unusual, and some people call him "tie-tongued". He stated that he did not recognize his voice on the tape recording and he did not know what dirt road Officer Womack was continually talking about, and also he denied strongly ever knowing or seeing Officer Womack before this day in court.

On cross-examination, Officer Womack described the seller as being 5'11" and 150 lbs. Also, in court, the officer described the appellant as being 5'10" or 5'11" and 160 or 170 lbs. Officer Womack stated that the seller had a thick tongue. As to whether or not the appellant was missing any teeth, he could not remember that. The officer identified the appellant as being the seller in court.

When an appellate court must review all the evidence, especially on an insufficiency evidence point, the Court must look at all the evidence in the light most favorable to the jury's verdict to see whether or not any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The jury is the exclusive judge of the facts proven, the credibility of witnesses, and the weight to be given to the evidence. *See Denison v. State*, 651 S.W.2d 754 (Tex.Crim.App.1983). The jury, as the trier of fact, is free to resolve any inconsistencies in the evidence. The jury may accept or reject any or all of the testimony of any witness. It appears in the case at bar that the jury resolved these inconsistencies in the evidence and found that Officer Womack was correct in identifying the appellant as the individual who sold him the cocaine.

The testimony of each witness described the appellant's speech as being distinct. Officer Womack described the appellant's speech as being distinct because he had a thick tongue. Appellant's brother also collaborated by saying that the appellant was "tie-tongued". Appellant's mother, Mrs. Tims, also agreed that her son had a speech problem and was "tie-tongued". From appellant's own testimony, he stated that some people have said "I'm very tie-tongued".

We find that the verdict of the jury was correct, that there was no insufficiency as to the identity of the appellant as the seller. We overrule point of error number one.

The appellant alleges in point of error number two that he received ineffective

assistance of counsel when his trial counsel failed to object to the prosecutor's allegedly improper jury argument. The appellant alleged that the jury argument was improper because the prosecutor bolstered the testimony of the only witness that the State presented who could identify the appellant as the individual who committed the offense of the delivery of cocaine.

When a question as to ineffective assistance of counsel is raised, the burden rests upon the proponent to show that his counsel's performance was deficient and that this deficiency was such as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* standards have been adopted by the Texas Court of Criminal Appeals in *Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App.1986) (en banc). It must be noted that isolated alleged deficiencies of defense counsel do not determine the adequacy of representation, rather the totality of the representation must be viewed in making the decision. *See King v. State*, 649 S.W.2d 42 (Tex. Crim.App.1983).

There is a presumption that counsel is competent and that counsel's assistance was effective. To rebut this presumption, it must be shown that counsel's representation was unreasonable under prevailing professional norms. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Whether the counsel's performance was sufficient is gauged by the totality of the representation of the accused. *See Ex parte Cruz*, 739 S.W.2d 53 (Tex.Crim.App.1987).

The closing argument that the appellant complains of is as follows:

Also, he tells you that, you know, the August 23 date is just absolutely—the offense report is absolutely wrong because the tape doesn't support it because you don't hear a car door opening or shutting, because you don't hear a car drive down a road back behind that little ,dirt road. Think about this, ladies and gentlemen. A police officer is going to lie on a report. Is he going to lie when there is a tape of it? No way. He is an 11–year veteran with the Conroe Police Department. He's not going to risk his career over some $20.00 dope deal. Think about that. He's not going to lie when there's a tape recording. David Womack· is not lying, ladies and gentlemen. These offenses occurred.

He tried to tell you as best he could. He tried to remember from his own memory what happened and he had to—You remember. I had to get him back to look at his offense report so he'd remember which one occurred when. He's not lying and he's not mistaken.

The comment that the appellant complains of was a response by the prosecuting attorney as to the appellant's argument. The appellant's trial counsel had invited the argument by attacking the credibility of the State's witness, Office David Womack. There was no objection to the argument by trial counsel. The argument was proper. Texas courts have long held that jury argument on the credibility of the state's witness was an acceptable response to defense argument attacking the credibility of that witness. *Chapman v. State*, 503 S.W.2d 237 (Tex.Crim.App.1974).

The defense made remarks concerning Officer Womack as a " 'mistaken' cop/naked king that for no good reason commands everyone's respect and trust either because the people do not want to hurt his feelings or because maybe he'd do something bad to them". Jury argument vouching for credibility of a witness has long been held not to be a reversible error where it was invited by the defense counsel. *See Wallace v. State*, 707 S.W.2d 928 (Tex.App.—Texarkana 1986), *aff'd* 782 S.W.2d 854 (Tex.Crim.App.1989).

The totality of representation of the appellant shows that his trial counsel's performance was sufficient. The trial was held from September 9 to September 11, 1991. Both parties conducted voir dire examination, each side presented witnesses during the guilt-innocence phase, appellant's counsel ably cross-examined each witness. As to the key witness, three re-cross-examinations were conducted by the

appellant's trial counsel. Both parties made closing arguments. The appellant vigorously dug into the credibility of the State's only eyewitness. During the punishment phase the State presented no witnesses and made no closing arguments. The appellant presented only two witnesses in this phase of the trial and made a closing argument.

■■ The burden is on the defendant to direct the appellate court to the evidence or circumstances showing reasonable probability that but for the counsel's unprofessional errors or conduct the results of the trial would have been different together with reasonable argument leading to that conclusion. *Guilder v. State,* 794 S.W.2d 765 (Tex.App.—Dallas 1990, no pet.) Appellant has failed in this regard. We overrule point of error number two. The judgment and sentence below is affirmed.

AFFIRMED.