**Alonzo Albert JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–94–338–CR.**

Court of Appeals of Texas,
Waco.

Jan. 3, 1996.

Rehearing Overruled Jan. 24, 1996.

Jim Parker, Comanche, for appellant.

B.J. Shepherd, Bosque County Attorney, Meridian, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

**OPINION**

THOMAS, Chief Justice.

Alonzo Johnson appeals from a conviction for driving while intoxicated (DWI). TEX.PE-NAL CODE ANN. § 49.04 (Vernon 1994 & Supp. 1996). In his only point of error, Johnson asserts that the court erred in its failure to grant a new trial based upon the State's failure to afford him a blood or breath test. We will affirm.

**STANDARD OF REVIEW**

The decision of whether to grant a new trial rests within the sound discretion of

the trial court. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993). The court's judgment below may only be reversed if it abuses its discretion in granting or denying an appellant's motion for new trial. *Id.*

## OFFICER'S OBLIGATION TO OFFER TEST

■ Johnson argued below that he was entitled to a new trial based upon the State's violation of his due-process rights in failing to offer him a blood or breath test as required by law. He argues that article 6701*l*–5 of the Revised Civil Statutes requires police officers to offer a blood or breath test to all persons arrested for DWI. See TEX.REV. CIV.STAT.ANN. art. 6701*l*–5, § 3 (Vernon 1977).

### THE TEXAS STATUTE

Article 6701*l*–5 does not do what Johnson claims. *Id.* Article 6701*l*–5 of the Texas Revised Civil Statutes is entitled "Chemical tests for intoxication; implied consent; evidence," and describes the circumstances in which intoxication testing may be done, the requirements when done, and the consequences of refusing to take a test. *Id.* Nowhere in the article is a duty imposed upon officers to afford a breath or chemical test to every person arrested for DWI. Any mandatory language in the article simply places restrictions and guidelines that must be followed when a test is administered. *Id.*

The statute does address an arrestee's right to request a test performed by a physician, qualified technician, chemist, or registered professional nurse, of his or her own choosing *when that person has already been tested* at the direction of a law enforcement officer. *Id.* § 3(d).

Furthermore, the statute provides that "[b]reath specimens must be taken and analysis made under such conditions as may be prescribed by the Texas Department of Public Safety [DPS], and by such persons as the Texas Department of Public Safety has certified to be qualified." *Id.* § 3(c). The legislature left to the DPS the task or authority to prescribe the conditions under which breath tests are to be administered. See 37 TEX.AD-MIN.CODE § 19 (West 1995) (Breath Alcohol Testing Regulations). Nowhere in the DPS regulations is there an affirmative duty imposed on an officer to offer a breath or other chemical test to an arrestee. *Id.*

According to the evidence, DPS policy requires officers to make a reasonable effort to secure a breath or blood test, but does not require a test in every case. The evidence at trial indicates that, on the way to the jail, Johnson became belligerent, began cursing, and remained belligerent as the officer completed his paperwork. The arresting officer testified that, when he advised Johnson he was going to ask him to take a breath test, Johnson cursed and said he was not going to take one. According to the officer, he did not secure a breath sample from Johnson because he became belligerent, and the officer did not want to risk injury to himself, a jailer, or Johnson by dealing with a belligerent arrestee. The officer affirmed that he followed the standard procedure in such a case—he placed Johnson in the "drunk tank" until the following morning when he could be taken before a judge.

Because there is no requirement in the statute (or regulations) that a sample be taken, and because the officer acted according to the DPS policy in attempting to obtain a breath sample, the court did not abuse its discretion in denying Johnson's motion for new trial based on article 6701*l*–5. *Gonzalez*, 855 S.W.2d at 696.

### DUE PROCESS

■ Although the loss or destruction of evidence can deny a criminal defendant due process of law, the duty to preserve evidence is limited to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed. *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984); *McDonald v. State*, 863 S.W.2d 541, 543 (Tex.App.—Houston [1st Dist.] 1993, no pet.). Furthermore, absent bad faith by the police, the mere failure to preserve potentially useful evidence does not of itself result in the denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); *Ex parte Brandley*, 781 S.W.2d 886,

894 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990).

We first note that the "evidence" of Johnson's alcohol level was never obtained as no test was given. However, assuming that due process requires an officer to offer a test to preserve that evidence, the evidence here supports the court's implied finding that due process was not violated. Johnson asserts that a breath sample would "clearly have been potentially useful evidence in support of his contention he was not legally intoxicated," but he does not argue that the evidence was clearly exculpatory, or that the officer acted in bad faith in not offering a him a breath or blood test. *Id.; Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534; *McDonald,* 863 S.W.2d at 543.

Based on the evidence, the court could have reasonably found that the test results would not have been exculpatory, but would have established that Johnson was legally intoxicated. Additionally, as previously discussed, the officer testified that he told Johnson he was going to give him a test, but that Johnson protested and was belligerent. Based on that evidence, the court could have reasonably found that the officer's failure to give Johnson a test was based—not upon bad faith—but upon Johnson's uncooperative actions.

Because the evidence supports the trial court's implied finding that Johnson's due-process rights were not violated, we hold that the court did not abuse its discretion in denying Johnson's motion for a new trial.[1] *Gonzalez,* 855 S.W.2d at 696. We overrule Johnson's point and affirm the conviction.

---

1. Johnson does not explain how granting a new trial would allow the court to correct the alleged due-process violation. However, elsewhere in his brief he requests reversal and rendition, and his prayer seeks "all other and further relief to which he may show himself entitled." We express no opinion as to the relief to which Johnson may be entitled in case of a due-process violation.