Cheyenne Pate v. The State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-015-CR

     CHEYENNE PATE,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 77th District Court
Limestone County, Texas
Trial Court # 8660-A
                                                                                                                

O P I N I O N
                                                                                                                

      Cheyenne Pate was convicted by jury of burglary of a habitation. See Tex. Pen. Code Ann.
§ 30.02 (Vernon 1994 & Supp. 1998). During the punishment phase of the trial, Pate pled true
to the two enhancement allegations pled in the indictment and punishment was set by the court at
32 years’ confinement in the Institutional Division of the Texas Department of Criminal Justice. 
See Tex. Pen. Code Ann. § 12.42(d) (Vernon Supp. 1998). In setting punishment the judge also
took into account Pate’s admissions that he committed four other unadjudicated burglaries. See
Tex. Pen. Code Ann. § 12.45 (Vernon 1994). On appeal, Pate brings seven points of error.
I. Factual Background
      On May 11, 1996, when Tushana Gamble returned to her trailer home, she discovered that
one of the doors to the trailer had been pried open. Inside Gamble found that her stereo and some
compact discs (CDs) were missing. Gamble called the police who came and investigated the
scene. 
      Later, on May 26, 1996, the police responded to a domestic disturbance call at the home of
the Nelsons. While in the Nelsons’ home, police officers saw a stereo that matched the description
of the stereo stolen from Gamble, and the officers took photos of it. Gamble identified the stereo
as being hers from the photos taken by police.
      Upon questioning Mrs. Nelson about the stereo, the police learned that the Nelsons had
purchased the stereo from John Carroll, Mrs. Nelson’s brother-in-law. Mrs. Nelson stated that
on May 11, 1996 she saw Cheyenne Pate and Ronald Watson bring the stereo and CDs to
Carroll’s home, and the next day, the Nelsons purchased the stereo from Carroll. Josh Smith, a
relative of the Nelsons, bought the CDs from Carroll. 
      During the trial Gamble testified that she knew Pate, and about two weeks before the
burglary, he had come to her house twice trying to sell items such as a car stereo, a television, and
a microwave. Gamble stated that she had not purchased any of these items from Pate, but Pate
could have seen her stereo at that time. 
      Ronald Watson admitted at trial that he had been in the car when Pate broke into Gamble’s
home. On the night of the burglary Watson said he and Pate had been drinking and using drugs. 
After their money and drugs ran out, the two men went to Gamble’s trailer looking for more
drugs, and Pate discovered Gamble was not home. Following the burglary, Watson said they went
straight to Carroll’s home to sell the stereo and CDs. 
II. Points of Error
      In his first point of error Pate alleges that the court should have granted his motion for a new
trial because his trial attorney provided ineffective assistance.


 Before addressing the merits of
Pate’s complaint, we must examine whether Pate’s motion for new trial was timely. See Tex. R.
App. P. 21.4. Pate’s sentence was imposed by the trial judge on December 20, 1996. Apparently,
after sentence was imposed, Pate’s attorney sent him a letter warning him that if he won on appeal
his statements made during the punishment phase of the trial admitting that he committed four
unadjudicated burglaries could be used against him during further proceedings in those cases
because prosecution would no longer be barred.


 Therefore, the letter states that Pate might want
to “get around” this problem by making ineffective assistance one of his points on appeal. On
January 10, 1997, Pate filed a pro se motion for new trial claiming that a new trial should be
granted because Pate was not fully apprised of the consequences of his section 12.45 agreement
entered during the punishment phase of the trial, and thus, he was denied effective assistance of
counsel. See Tex. Pen. Code Ann. § 12.45. The clerk’s record also contains a letter from Pate’s
trial attorney dated January 14, 1997 requesting that another attorney be appointed to handle Pate’s
appeal because Pate was claiming ineffective assistance of counsel on appeal. During the new trial
hearing, Pate’s appellate attorney stated that on January 22 he received a letter from the judge
appointing him Pate’s appellate counsel. Appellate counsel then filed, on February 28, 1997, a
motion to consider his untimely amended motion for new trial. 
      The trial judge allowed Pate’s appellate attorney to present evidence in support of both the pro
se motion and the untimely amended motion for new trial at the hearing on these new trial
motions, but the judge did not rule on whether he was granting the motion to consider the untimely
amended motion for new trial. Instead the judge stated he was taking the matter under advisement. 
No ruling was made by the judge, and the motions for new trial were overruled by operation of
law. Tex. R. App. P. 21.8. 
      Rule of Appellate Procedure 21.4 sets the time to file and amend motions for new trial in
criminal cases,
(a) To File. The defendant may file a motion for new trial before, but no later than 30
days after, the date when the trial court imposes or suspends sentence in open court.
 
(b) To Amend. Within 30 days after the date when the trial court imposes or suspends
sentence in open court but before the court overrules any preceding motion for new trial,
a defendant may, without leave of court, file one or more amended motions for new trial.

Tex. R. App. P. 21.4 (see also former Rule 31(a)).


 Rule 21.4, like its predecessors, former Rule
31(a)


 in the Rules of Appellate Procedure or former article 40.05 in the Code of Criminal
Procedure (as amended in 1981),


 does not allow a motion for new trial to be amended outside the
30 day time-frame set by the rule. See Belton v. State, 900 S.W.2d 886, 902 (Tex. App.—El Paso
1995, pet. ref’d) (stating that a motion for new trial cannot be amended outside the 30 day period
even with leave of court); Pena v. State, 767 S.W.2d 206, 207 (Tex. App.—Corpus Christi 1989,
no pet.); see also Drew v. State, 743 S.W.2d 207, 222-23 (Tex. Crim. App. 1987); Dugard v.
State, 688 S.W.2d 524, 530 (Tex. Crim. App. 1985), overruled on other grounds, Williams v.
State, 780 S.W.2d 802, 803 (Tex. Crim. App. 1989). Other courts have held that an untimely
amended motion for new trial is a “nullity” which “cannot form the basis for points of error on
appeal.” Belton, 900 S.W.2d at 902; see Waller v. State, 931 S.W.2d 640, 644-45 (Tex.
App.—Dallas 1996, no pet.); Johnson v. State, 925 S.W.2d 745, 747 (Tex. App.—Fort Worth
1996, pet. ref’d).
      Therefore, the trial judge did not err in allowing Pate’s amended motion for new trial be
overruled by operation of law because it was untimely. However, at the motion for new trial
hearing, Pate argued that his amended motion for new trial should be considered despite its
untimely filing because there are exceptions to the 30 day time limit to amend new trial motions. 
We disagree. The instant case does not fit within an exception to the 30 day time limit in Rule
21.4 for motions for new trial. 
      In a frequently cited case, Whitmore v. State, 570 S.W.2d 889, 898 (Tex. Crim. App. 1977)
(on rehearing), the Court of Criminal Appeals granted a capital murder defendant’s motion for
new trial which was untimely filed because the defendant’s alleged accomplice in committing the
murder was later found not guilty. The Court stated that the accomplice’s testimony was newly
available evidence, and thus, the Court could grant the defendant’s untimely motion for new trial
because the procedural rules governing new trial motions yielded to the defendant’s constitutional
right to compulsory process to call the accomplice to testify. Id. But the continuing viability of
the Whitmore exception has been questioned by later decisions. See, e.g., Roberts v. State, 784
S.W.2d 430, 435 (Tex. Crim. App. 1990); Drew, 743 S.W.2d at 224-25; Belton, 900 S.W.2d at
902; State ex. rel. Holmes v. Shaver, 824 S.W.2d 285, 289 (Tex. App.—Texarkana 1992, no
pet.); Fowler v. State, 803 S.W.2d 848, 849 (Tex. App.—Corpus Christi 1991, no pet.); see also
Olivio v. State, 918 S.W.2d 519, 525 (Tex. Crim. App. 1996). Specifically, courts have noted
that at the time Whitmore was decided article 40.05 of the Code of Criminal Procedure allowed
late filed motions for new trial if good cause was shown, but this language was deleted in later
amendments to article 40.05


 and is not present in either former Rule of Appellate Procedure
31(a)


 or current Rule 21.4. See Roberts, 784 S.W.2d at 435; Drew, 743 S.W.2d at 224; Fowler,
803 S.W.2d at 849. 
      As the plain language of Rule 21.4 does not give the trial judge discretion to grant an untimely
motion for new trial, we agree with the other courts which have questioned whether a trial court
could rely on Whitmore to grant an untimely motion for new trial. However, in the instant case,
we need not decide this issue because, even if this authority still exists, Pate has failed to meet the
requirements of Whitmore. The defendant in Whitmore was prevented from presenting the
testimony of his alleged accomplice at a timely new trial hearing because this testimony was not
available until the accomplice was acquitted. There is no evidence that Pate was similarly
prevented, due to a witness’ unavailability to testify, from timely amending his motion for new
trial so that it contained additional grounds for a new trial. 
      Instead of looking to Whitmore for authority to grant an out-of-time motion for new trial some
appellate courts have used Rule 2 in the Rules of Appellate Procedure to suspend the 30 day
requirement for filing or amending a motion for new trial and have abated an appeal to allow an
untimely motion for new trial be filed. Tex. R. App. P. 2; see Boyette v. State, 908 S.W.2d 56,
58-59 (Tex. App.—Houston [1st Dist.] 1995, no pet.); Oldham v. State, 889 S.W.2d 461, 462-63
(Tex. App.—Houston [14th Dist.] 1994, pet. dism’d); Harris v. State, 818 S.W.2d 231, 232 (Tex.
App.—San Antonio 1991, no pet.). An abatement for an out-of-time motion for new trial has
sometimes been utilized by other courts when trial counsel has effectively ceased representing the
defendant after trial but appointment of appellate counsel is delayed past the time for filing a
motion for new trial. See Burnett v. State, No. 01-96-00768-CR, slip op. at 3-12, 1997 WL
269517, *1-7 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d); Boyette, 908 S.W.2d at 59;
Oldham, 889 S.W.2d at 462-63. 
      Pate’s appellate counsel argued at the motion for new trial hearing that good cause existed for
an out-of-time motion for new trial because he was not appointed as appellate counsel until after
the time to timely amend Pate’s pro se motion for new trial expired. However, on appeal Pate did
not request an abatement of his appeal for the trial court to consider his untimely motion for new
trial. Despite the fact that this issue was not raised on appeal, we note that after Pate’s sentence
was imposed trial counsel continued to act as Pate’s attorney and did not abandon him, believing
that his responsibilities had ended. Trial counsel stated at the motion for new trial hearing that
he did not file a motion for new trial because he believed error had been preserved for appellate
review. Furthermore, it appears that trial counsel planned on representing Pate during the
appellate process, but because Pate wished to raise ineffective assistance of counsel on appeal, trial
counsel believed another attorney should be appointed to handle the appeal. Thus, even if Pate
had requested an abatement, we do not believe that good cause would exist for suspending the
rules and allowing an out-of-time motion for new trial. Consequently, it is clear that Pate’s
untimely amended motion for new trial was properly overruled by operation of law. 
      We will, however, consider Pate’s point that the trial court abused its discretion in allowing
his timely pro se motion for new trial be overruled by operation of law. See State v. Gonzalez,
855 S.W.2d 692, 696 (Tex. Crim. App. 1993) (the trial judge’s ruling on a motion for new trial
is reviewed on appeal for an abuse of discretion); see also Lewis v. State, 911 S.W.2d 1, 7 (Tex.
Crim. App. 1995); Johnson v. State, 913 S.W.2d 736, 736-37 (Tex. App.—Waco 1996, no pet.). 
In Pate’s pro se motion for new trial he contends that his trial counsel did not fully inform him of
the consequences of his section 12.45 agreement during the punishment phase of the trial, and
thus, counsel provided ineffective assistance. 
      We use the standard established in Ex parte Duffy, 607 S.W.2d 507 (Tex. Crim. App. 1980),
to review the effectiveness of counsel at the punishment phase of a non-capital trial. Vaughn v.
State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). This standard is whether “counsel was
reasonably likely to render effective assistance and whether counsel reasonably rendered effective
assistance.” Id.; see Valencia v. State, 946 S.W.2d 81, 83 (Tex. Crim. App. 1997); Raney v.
State, No. 10-96-158-CR, slip op. at 17-18, 1997 WL 784542, * 9 (Tex. App.—Waco Dec. 3,
1997, pet. filed). In examining the effectiveness of counsel we evaluate the totality of counsel’s
representation, recognizing that a defendant is not entitled to errorless counsel but that sometimes
a single error by counsel may constitute ineffective assistance of counsel. See Ex parte Felton,
815 S.W.2d 733, 735 (Tex. Crim. App. 1991); Ware v. State, 875 S.W.2d 432, 434 (Tex.
App.—Waco 1994, pet. ref’d). 
      At the hearing on Pate’s motion for new trial, Pate’s trial attorney testified that during the
sentencing phase of the trial Pate indicated a desire to clean his record of “all the things that could
come back to get him later.” Thus, trial counsel drafted a handwritten section 12.45 agreement
whereby Pate admitted committing four unadjudicated burglaries which the court would consider
in sentencing Pate. See Tex. Pen. Code Ann. § 12.45. Section 12.45 would then bar a
subsequent prosecution for the unadjudicated burglaries Pate admitted committing. Id. This
section 12.45 agreement was signed by Pate, his trial attorney, and the prosecutor. As part of the
agreement, Pate took the stand and orally admitted committing the burglaries listed in the
agreement, plus he identified persons who assisted him in committing those offenses. However,
Pate’s trial counsel stated that he failed to warn Pate that if his appeal was successful his
statements made at punishment could possibly be used against him in further proceedings involving
the four unadjudicated burglaries. The attorney stated that he felt Pate should have had this
information before making his decision whether to admit the four unadjudicated burglaries. 
      First, we are not convinced that Pate’s statements made pursuant to the section 12.45
agreement would be admissible if his burglary conviction is reversed on appeal. See generally
Tex. R. Crim. Evid. 410(2) (statements made pursuant to a guilty or nolo contendere plea are
inadmissible if the plea is later withdrawn); Kercheval v. United States, 274 U.S. 220, 224-25,
47 S.Ct 582, 583 (1927) (same); Childs v. State, 837 S.W.2d 822, 824 (Tex. App.—San Antonio
1992, pet. ref’d) (evidence that a defendant pled guilty but the conviction was reversed on appeal
was inadmissible during trial after the defendant then entered a not guilty plea to the charge); but
see Wallace v. State, 707 S.W.2d 928, 934 (Tex. App.—Texarkana 1986), affirmed, 782 S.W.2d
854 (Tex. Crim. App. 1989); Wells v. State, 115 S.W.2d 658, 660 (Tex. Crim. App. 1938);
Rodriguez v. State, 94 S.W.2d 476, 478 (Tex. Crim. App. 1936). But we need not resolve this
question because we do not believe counsel was ineffective for failing to warn Pate about the
possible collateral consequences of admitting the four unadjudicated burglaries for the court’s
consideration in setting punishment.
      When a defendant pleads guilty to an offense, counsel is not ineffective for failing to warn of
the collateral consequences of this plea. Ex Parte Morrow, 952 S.W.2d 530, 536 (Tex. Crim.
App. 1997). A consequence is collateral if “it is not a definite, practical consequence of a
defendant’s guilty plea.” Id. Specifically, in Ex parte Morrow the defendant was found guilty of
capital murder and while this conviction was on appeal, he pled guilty to three different offenses. 
Id. at 533. After Morrow’s capital murder conviction was reversed on appeal and a new trial
ordered, he then claimed his attorney was ineffective for failing to warn him that his guilty pleas
could be used during a retrial on the capital murder charge. Id. at 535. The Court of Criminal
Appeals decided that Morrow’s attorney was not ineffective and was “under no duty to inform
applicant of the various ways his three guilty pleas could be used against him” at a “hypothetical
retrial” on the capital murder charge. Id. at 536-37.
      While the instant case does not involve a guilty plea as in Ex parte Morrow, the principles
articulated in Morrow are nonetheless applicable. In this case Pate is complaining about how his
admissions made during the punishment phase of the trial might be used in a hypothetical retrial
of his case and in additional trials for the four unadjudicated burglaries. We do not believe that
counsel was ineffective for failing to warn of these potential consequences of his admissions which
are uncertain and indefinite. It is clear that Pate expressed to his trial attorney his desire to “clear
his record” and trial counsel accomplished this by entering a section 12.45 agreement at
punishment. Consequently, Pate’s first point is overruled because Pate received reasonably
effective assistance of counsel at the punishment phase of his trial. 
      In his second point of error, Pate contends that the court erred by taking “no action” after a
juror informed the court that one of the witnesses, Officer Dennis Wilson, was her first cousin. 
Dennis Wilson was originally called to testify by the defense during Pate’s case-in-chief and then
Wilson was recalled by the State to testify as a rebuttal witness. However, after Wilson testified
for Pate, Juror Mattix sent a note to the court stating, “Dennis Wilson is my first cousin.” Pate
then objected to any further testimony from Wilson “[i]n light of the jury note that we received.” 
The court overruled Pate’s objection and Wilson testified during rebuttal. 
      On appeal Pate contends that the court should have questioned Juror Mattix to determine if
she was biased as a result of knowing Wilson. However, Pate’s complaint on appeal does not
comport with his objection at trial. See Leno v. State, 934 S.W.2d 421, 423 (Tex. App.—Waco
1996, pet. dism’d) (a party’s point of error must correspond to the motion made at trial); In re
T.R.S., 931 S.W.2d 756, 758 (Tex. App.—Waco 1996, no pet.). At trial Pate simply objected
to any further testimony by Officer Wilson, but he did not request that the judge question Juror
Mattix to determine if she was biased. Thus, Pate has failed to preserve this point for appellate
review. Tex. R. App. P. 33.1(a)(1); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995); Chambers v. State, 903 S.W.2d 21, 32 (Tex. Crim. App. 1995). Pate’s second point is
overruled. 
      In his third point Pate asserts that the court erred in denying his motion to suppress evidence
of three prior misdemeanor convictions. At trial Pate collaterally attacked the validity of these
three prior convictions because he claimed that he was not properly admonished about his right
to counsel and the dangers of self-representation before he entered a guilty plea to the offenses.
      When the defendant seeks to collaterally attack a prior conviction, he has the burden to
overcome the presumption of regularity in the judgment and prove that the prior conviction is
void. See Robinson v. State, 739 S.W.2d 795, 798-99 (Tex. Crim. App. 1987); Galloway v. State,
578 S.W.2d 142, 143 (Tex. Crim. App. [Panel Op.] 1979) (a conviction can be collaterally
attacked if void or tainted by constitutional defect); Ray v. State, 908 S.W.2d 71, 72-73 (Tex.
App.—Beaumont 1995, pet. ref’d); Shipley v. State, 828 S.W.2d 475, 478 (Tex. App.—El Paso
1992, pet. ref’d). A denial of counsel is a constitutional defect which may be raised by a collateral
attack, but to succeed the defendant must show he did not voluntarily, knowingly, and intelligently
waive his right to counsel. See Williams v. State, 946 S.W.2d 886, 900 (Tex. App.—Waco 1997,
no pet.); Garcia v. State, 909 S.W.2d 563, 565 (Tex. App.—Corpus Christi 1995, pet. ref’d);
Campise v. State, 745 S.W.2d 534, 535 (Tex. App.—Houston [1st Dist.] 1988, no pet.); Swanson
v. State, 722 S.W.2d 158, 164 (Tex. App.—Houston [14th Dist.] 1986, pet. ref’d). Standing
alone, a defendant’s assertion that he was denied counsel is insufficient to overcome the
presumption of regularity in favor of the judgment. Williams, 946 S.W.2d at 900 (quoting
Swanson, 722 S.W.2d at 164).
      After Pate testified on his own behalf at trial, the State sought to impeach his testimony with
evidence that Pate had previously pled guilty to theft, criminal trespassing, and possession of
marijuana. The State introduced into evidence a judgment for each of these offenses which states
that the defendant elected to waive an attorney and voluntarily enter a guilty plea. These
judgments are signed by both the county judge and Pate. Additionally, for two of these
convictions, Pate introduced into evidence a signed waiver agreement which lists a defendant’s
rights, including the right to an attorney, and states that the defendant wishes to waive those
rights. 
      Pate argues that the record does not show he was warned of the dangers of self-representation,
and thus, his waiver of his right to counsel was invalid. The United States Supreme Court, in
Faretta v. California, decided that when a defendant chooses to represent himself at trial, the court
must make him aware of the dangers and disadvantages of self-representation so the accused may
make a knowing and intelligent choice to proceed without a lawyer. 422 U.S. 806, 835, 95 S.Ct.
2525, 2541 (1975). However, these warnings are not required when a defendant does not contest
his guilt and simply pleads guilty or no-contest after waiving his right to counsel. Johnson v.
State, 614 S.W.2d 116, 119 (Tex. Crim. App. 1981) (on rehearing); Garcia, 909 S.W.2d at 565-66; Barras v. State, 902 S.W.2d 178, 180 (Tex. App.—El Paso 1995, pet. ref’d); State v. Finstad,
866 S.W.2d 815, 817 (Tex. App.—Waco 1993, pet. ref’d). 
      Thus, we cannot agree with Pate’s contention that his waiver of right to counsel was invalid. 
Not only does the judgment for each of these convictions state that Pate voluntarily waived his
right to counsel, but the county judge for Limestone County also testified that she always
admonishes the individuals who appear in her court about their right to counsel and that she
recalled Pate being a “very happy defendant” when he appeared in her court to plead guilty to
theft. Also, the assistant county attorney testified that when a defendant was entering a guilty plea
without an attorney he would read through the waiver form to make sure the individual knew his
or her rights and wanted to waive them. 
      Consequently, because a defendant is not required to be admonished about the dangers of self-representation before entering a guilty plea and because Pate has failed to show he did not
voluntarily waive his right to counsel in entering a guilty plea to the three misdemeanor offenses,
we believe the trial judge did not err in denying Pate’s motion to suppress this evidence. Pate’s
third point is overruled.
      In his fourth point of error Pate complains that the trial court did not provide an appropriate
answer in response to a jury note which asked the judge,
“May we consider Mr. Watson’s previous history in consideration of his credibility? As
being the evidence against Mr. Pate?”

In response, the court answered, 
 
      “Please follow the instructions in the Charge of the Court.”

Pate objected that the court’s answer did not answer the jury’s question and suggested that the
court inquire as to what the jury meant by Watson’s previous history.
      Article 36.27 provides that a jury may communicate with the court in writing and that the
court shall answer the jury’s questions in writing. Tex. Code Crim. Proc. Ann. art. 36.27
(Vernon 1981). In the court’s answer the judge may give additional instructions to the jury or he
may refer the jurors to the court’s charge. See Ash v. State, 930 S.W.2d 192, 196 (Tex.
App.—Dallas 1996, no pet); see also Herring v. State, 440 S.W.2d 649, 652 (Tex. Crim. App.
1969) (although error was not preserved, the Court stated the trial judge correctly answered the
jury’s question by referring the jurors to the charge and informing the jurors that they were the
exclusive judges of the facts); Fields v. State, 395 S.W.2d 36, 38 (Tex. Crim. App. 1965) (no
error to answer a jury question by referring to a specific paragraph in the charge); Edwards v.
State, 160 S.W. 709, 710 (Tex. Crim. App. 1913) (no error to inform the jury to look to the
charge of the court); Bonner v. State, 820 S.W.2d 25, 29 (Tex. App.—Houston [14th Dist.] 1991,
pet. ref’d) (no error to answer a jury question with correct statements about the law); but see
Gordon v. State, 633 S.W.2d 872, 877 (Tex. Crim. App. [Panel Op.] 1982) (court’s answer
referring jurors to the charge was improper). In the instant case, we do not believe the court erred
in answering this jury question by referring the jurors to the court’s charge. The charge properly
instructs the jurors on the elements of the offense which the State was required to prove beyond
a reasonable doubt and informs the jurors that they are the judges of the credibility of the
witnesses. As we find no error in the court’s response Pate’s fourth point of error is overruled. 
      In his fifth point, Pate claims the court erred in overruling his objection to Ronald Watson’s
testimony because the State failed to provide the defense with a copy of Watson’s criminal history
in a “useable form” because the computer printout provided was difficult to understand and did
not contain specific information about each offense. On appeal Pate claims this violated his 6th
amendment right to confrontation and his right to due process under the 14th amendment of the
United States Constitution. See U.S. Const. amend. VI, XIV. However, at trial Pate’s only
objection was that the State violated the court’s discovery order which directed the State to provide
criminal histories for the State’s witnesses prior to trial. Thus, because Pate’s trial objection does
not comport with his complaint on appeal, we conclude he has failed to preserve error on this
point. See Tex. R. App. P. 33.1; Broxton, 909 S.W.2d at 918; Leno, 934 S.W.2d at 423; In re
T.R.S., 931 S.W.2d at 758. Additionally, we note that when the court overruled Pate’s objection
to Watson’s testimony the judge stated that he would grant Pate a continuance if he was unable to
ascertain the status of Watson’s convictions which could be used for impeachment under Rule of
Criminal Evidence 609, but Pate never requested a continuance. The judge also allowed Pate to
question Watson outside the presence of the jury about his criminal history. Pate’s fifth point of
error is overruled.
      In his sixth point of error, Pate urges that four of the State’s exhibits, the stereo, speakers,
and CD case, should have been suppressed pursuant to article 38.23 of the Code of Criminal
Procedure because the State violated articles 47.01 and 47.03 when they returned these items to
Gamble without a court order. It is clear from the record that article 47.01 was not followed when
officers returned the stolen items to Gamble without a court order. See Tex. Code Crim. Proc.
Ann. art. 47.01 (Vernon Supp. 1998). However, this violation of the statute does not require that
these items be suppressed under article 38.23(a) which provides that evidence obtained by officers
in violation of federal or state law should not be admitted as evidence against the accused in a
criminal case. See Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon Supp. 1998). As we
recently held in Reeves v. State, “Article 38.23(a) may not be invoked for statutory violations
unrelated to the purpose of the exclusionary rule.” No. 10-96-196-CR, slip op. at 15 (Tex.
App.—Waco March 11, 1996, no pet. h.). The stereo, speakers, and CD case were not obtained
by officers in violation of federal or state law, and thus, need not be suppressed due to a violation
of article 47.01. See Collins v. State, 686 S.W.2d 272, 275 (Tex. App.—Houston [14th Dist.]
1985, no pet.); see generally Carroll v. State, 911 S.W.2d 210, 221 (Tex. App.—Austin 1995,
no pet.). 
      In this point Pate also maintains that these items should have been suppressed because the
State failed to prove the chain of custody of the items or Gamble’s ownership of the items. Pate
did not raise this objection at trial either in his motion to suppress or at the time these items were
admitted into evidence. Because no objection was made at trial, no error is preserved for appellate
review. See Tex. R. App. P. 33.1. Pate’s sixth point is overruled.
      In his seventh point of error Pate complains that evidence about his drug use was improperly
admitted into evidence through the testimony of Watson and argued by the State in closing
argument. Pate believes the State failed to give him notice of its intent to introduce this extraneous
bad act, that the evidence was inadmissible, and that trial counsel was ineffective for failing to
object to this evidence. See Tex. Code Crim. Proc. Ann. art. 37.07 §3(g) (Vernon Supp. 1998);
Tex. R. Crim. Evid. 404(b). 
      We agree with the State that Pate has failed to preserve his complaint about both the lack of
notice to the defendant of the State’s intent to introduce evidence about his drug use and his
complaint that this is inadmissible character evidence. The Rules of Appellate Procedure require
a timely, specific objection at trial to preserve error for appellate review. See Tex. R. App. P.
33.1. Pate has not identified any objection in the record where he complained at trial about a lack
of notice that the State intended to introduce this evidence, and we have found none. Thus, any
complaint about a lack of notice is not preserved. See id. Furthermore, Pate did not object either
during Watson’s testimony or during closing arguments to statements about Pate’s drug use. 
These complaints have not been preserved for our review. See id. 
      At trial Pate did have a running objection to Watson’s testimony based on his objection that
Watson should be prohibited from testifying because the State did not furnish a useable criminal
history for Watson, but this objection does not preserve error as to Watson’s testimony about his
and Pate’s drug use. Running objections eliminate the need for a defendant to make a series of
repetitive individual objections to evidence, but the running objection still must be specific as to
the ground for the objection and only that ground is preserved for appellate review. See Ford v.
State, 919 S.W.2d 107, 113 (Tex. Crim. App. 1996); Ethington v. State, 819 S.W.2d 854, 858-59
(Tex. Crim. App. 1991). Because the running objection to Watson’s testimony was not based on
an objection to testimony about Pate’s drug use, it was not a specific objection to this evidence and
we conclude it did not preserve error on this point. 
      Additionally, no specific objection was made to statements in the State’s closing arguments
about Pate’s drug use. Pate’s two objections during the State’s closing did not mention Pate’s drug
use, but relate to the prosecutor’s argument that Watson must have been telling the truth because
he was admitting his involvement in the crime despite the fact that the State could still charge him
with burglary. As no specific objection was made during closing arguments to statements about
Pate’s drug use, this error is not preserved for review. See Tex. R. App. P. 33.1; Valencia v.
State, 946 S.W.2d 81, 82-83 (Tex. Crim. App. 1997); Cockrell v. State, 933 S.W.2d 73, 89 (Tex.
Crim. App. 1996), cert. denied, — U.S. —, 117 S.Ct. 1442 (1997); Cacy v. State, 942 S.W.2d
783, 784 (Tex. App.—Waco 1997, pet. ref’d). 
      Finally, we must review Pate’s contention that his trial attorney was ineffective for failing to
object to testimony and argument about his drug use. In judging the effectiveness of counsel at
the guilt-innocence phase of the trial, we use the standard set by the Supreme Court in Strickland
v. Washington to decide “(1) whether counsel’s performance fell below an objective standard of
reasonableness under prevailing professional norms; and (2) whether there is a reasonable
probability that but for counsel’s deficient performance the result of the proceeding would have
been different.” Valencia, 946 S.W.2d at 83; see Strickland v. Washington, 466 U.S. 668, 687,
104 S.Ct. 2052, 2064 (1984); Madden v. State, 911 S.W.2d 236, 241 (Tex. App.—Waco 1995,
pet. ref’d). We apply a strong presumption that counsel provided reasonable professional
assistance, and the defendant bears the burden of defeating this presumption. Valencia, 946
S.W.2d at 83; Owens v. State, 916 S.W.2d 713, 717 (Tex. App.—Waco 1996, no pet.). In
reviewing the effectiveness of counsel, a court must examine the totality of defense counsel’s
representation and view his actions from his perspective at trial. See Madden, 911 S.W.2d at 241;
see also R.X.F. v. State, 921 S.W.2d 888, 902 (Tex. App.—Waco 1996, no pet.). 
      Given that the record in this case is silent as to why trial counsel did not object to certain
testimony and argument we should not speculate about counsel’s reason for not objecting but
presume counsel’s decision was the product of “reasonable professional judgment.” See R.X.F.,
921 S.W.2d at 903; see also Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994);
Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.); cf. Mendoza
v. State, 935 S.W.2d 501, 503 (Tex. App.—Waco 1996, no pet.). Moreover, even if counsel
erred in not objecting to testimony about Pate’s use of drugs, there is not a reasonable probability
that but for this error the result of the proceeding would have been different. See Owens, 916
S.W.2d at 716 (“A reasonable probability is a probability sufficient to undermine confidence in
the outcome.”); see also Miniel v. State, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992). The
evidence about Pate’s use of drugs can be summarized as follows: (1) Watson stated he and Pate
had been using drugs the night of the burglary and had gone to Gamble’s home looking for more
drugs, (2) Pate denied using drugs the night of the burglary but stated that when he was at a pay-phone Watson drove by and offered to take him home, but first Watson stopped at Carroll’s home
to sell the stereo, (3) Pate stated that he did not do drugs and always passed his drug tests, (4) Pate
denied having told anyone he beat a drug test, and (5) Officer Wilson testified on rebuttal that Pate
told him how he beat a drug test. In this case there was substantial evidence of Pate’s guilt from
the testimony of Gamble, Mrs. Nelson, and Watson, and the evidence about Pate’s drug use, as
summarized above, does not undermine confidence in the outcome of the trial or create a
reasonable probability that if evidence about Pate’s use of drugs had not been admitted the result
of the proceeding would have been different. Pate’s seventh point is overruled.
      The judgment is affirmed.
 
                                                                               BOBBY L. CUMMINGS
                                                                               Justice

Before Chief Justice Davis,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed April 1, 1998
Do not publish