Criminal Case Template













COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




RABAB FARES,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-02-00354-CR


Appeal from the


County Court at Law No. One


of El Paso County, Texas


(TC# 20010C15684)


M E M O R A N D U M O P I N I O N



 This is an appeal from a jury conviction for the offense of class-B misdemeanor theft. 
The court assessed punishment at thirty (30) days confinement probated for six months, and
a fine of $500. We affirm the judgment of the trial court.

I. SUMMARY OF THE EVIDENCE


 This is a case involving a shoplifting incident at the Dillard's department store in
Sunland Park Mall in El Paso County, Texas. On October 9, 2001, an employee of the store
named Ricardo Rodriguez was working as a surveillance camera operator. As he was
monitoring his cameras, he observed the Appellant engaging in suspicious conduct. He
observed her take a skirt suit from a display rack. She took the clothes off the hanger, placed
them on the floor, and folded them and put them into a plastic bag. She stayed in the store
for a brief period and exited the store without paying for the suit. Rodriguez contacted store
security personnel on a two-way radio. The recording of the surveillance video was copied
to a CD and this CD of the events Rodriguez described was shown to the jury. 

 Sergeant Jose Jaime Medina of the El Paso Police Department testified that he had a
second job working security for Dillard's. Rodriguez contacted him on the two-way radio
stating that he had seen some activity that was indicative of a theft. Medina followed
Appellant. She left the store without paying for the skirt suit. Medina and another officer
followed Appellant outside. They detained her and brought her back into the store. While
she was detained in the store security office, Medina looked at the tape of the incident; he
related to seeing a similar sequence of events as depicted by Rodriguez. He stated that the
skirt suit was inside the plastic bag when Appellant was detained outside the store. The tags
were still on the garment; Appellant did not have a receipt, and there was no proof-of-purchase (POP) label attached to the suit. There was testimony that such a label would
necessarily have been attached to the tag on the clothing. Medina testified that he overheard
Appellant state to Liliana Deanda, a store employee, that the clothing item had been
purchased in Phoenix. When queried as to which store in Phoenix she made the purchase,
Appellant responded by asking how many stores there were in Phoenix. 

 Liliana Deanda testified regarding that conversation. She then utilized a store
computer and determined that her store had one skirt suit in the inventory that matched the
suit in the plastic bag. Other than the suit the bag, no other suit of that description could be
found in the store. She discovered that no Dillard's stores in Phoenix carried the garment in
that size and she so informed Appellant. 

 Maria Rokovitz testified that she was the store manager for the Dillard's store in the
Fashion Show Mall in Las Vegas, Nevada. Several days before October 15, 2001, she
received a telephone call from an individual who identified herself as Appellant. She stated
that she had purchased a skirt suit with cash at her Las Vegas store in September of 2001,
and she had lost her receipt and she needed a duplicate receipt. Rokovitz looked up the style
number of the garment and determined that while the store did not carry a petite size four
skirt suit, it did carry a misses size four. She sent a letter to Appellant's address stating:

 Dear Mrs. Fares:

 This letter serves as a duplicate receipt for a purchase of a suit, by manufacture Le
Suit, style P93061, priced $179.00 plus tax. The purchase occurred in September
2001 at the above Dillard's location. 


 The letter was signed by Rokovitz. 

 Rokovitz stated that she failed to ascertain whether the caller had actually purchased
the garment with cash. She acted out of motives of courtesy and customer service
orientation. She testified that it was a "stupid move" on her part to write the letter without
confirming the fact of the purchase. She stated that the Las Vegas store had never carried
the skirt suit in the petite four size. 

 Scott McMurtrie, the operations manager for the Sunland Park Mall Dillard's store,
testified regarding various store records from the computer system. The records showed that
the skirt suits of the size petite four were only carried in the Sunland Park Mall and the Cielo
Vista Mall store in El Paso. The stores in Albuquerque, Las Vegas, and Colorado carried the
style of the suit in petite sizes but not size four. None of the Dallas stores carried the exact
item. Neither store in El Paso had sold the size and style of skirt suit found in Appellant's
possession. McMurtrie stated that no Dillard's store had shipped the article in question to
another store or to Appellant. He testified that there was a computer record of a telephone
order for the type of skirt suit involved at one of the Dallas stores in the name of an
individual named Frares on October 15, 2001. The transaction was never completed and
there was no sale of the garment. 

II. DISCUSSION


 In Issue No. One, Appellant maintains that the court improperly restricted a voir dire
question regarding the concept of reasonable doubt. During the defense portion of the voir
dire proceedings, the following exchange occurred:

 DEFENSE: I'm going to suggest to you that you consider this definition. A doubt
based on reason and common sense after a careful and impartial
consideration of all the evidence in this case. It is the kind of doubt that
will make - 


 STATE: Your Honor, I'm going to at this time - Your Honor, I object-


 COURT: Just a second.


 STATE: At this time he's going into the Geesa charge which has been
overruled, is no longer a proper instruction. And I will request
that the Court instruct Mr. Aguilar from reading that definition
because it is not the law. 


 DEFENSE: Judge, may I respond, please?


 STATE: Yes, sir.


 DEFENSE: Geesa's not applicable to what I'm doing. It's clearly stated that
it is not a mandatory obligation on the Court to instruct that this
definition of Geesa - I'm clearly, clearly within the rules of voir
dire and the Rules of Criminal Procedure to offer my opinion of
beyond a reasonable doubt. Even though it is the same
definition that the court, the State of Texas used for many, many
years. This is my opinion.


 After further discourse, the court again sustained the State's objection. Defense
counsel then continued: 

 So each and every one of you will determine what beyond a reasonable doubt is. But
it is exactly that. Something of the highest magnitude that you would hesitate to act
on. That's why it's beyond a reasonable doubt. Be it your wife, a house, the most
important decisions in your life, that you will not hesitate to make that decision. And
in my opinion, that is beyond a reasonable doubt. 


 The trial court has broad discretion over the process of selecting a jury. Barajas v.
State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Therefore, appellate courts should not
disturb a trial court's ruling on the propriety of a particular question during voir dire absent
an abuse of discretion. Id.; Davis v. State, 894 S.W.2d 471, 474 (Tex. App.--Fort Worth
1995, no pet.). In particular, a trial court may restrict confusing or misleading voir dire
questions. Howard v. State, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996); Jones v. State,
850 S.W.2d 223 (Tex. App.--Fort Worth 1993, pet.ref'd). A trial court abuses its discretion
if it prohibits a proper question regarding a juror's views on an issue applicable to the case.
Howard v. State, 941 S.W.2d 102, 108 (Tex. Crim. App.1996). Clearly, it is proper to
question veniremen concerning their understanding of the term "reasonable doubt." Dinkins
v. State, 894 S.W.2d 330, 344-45 (Tex. Crim. App. 1995); Lane v. State, 828 S.W.2d 764,
766 (Tex. Crim. App. 1992). However, if no absolute limitation is placed on the underlying
substance of a defendant's question, no abuse of discretion is shown if the accused is allowed
to ask the substance of a question in a different form. Howard, 941 S.W.2d at 108-111. 
Appellant sought to question the venire panel regarding the Geesa instruction on reasonable
doubt. (1) While the court restricted Appellant from using the exact language of the Geesa
instruction, the court did not prevent trial counsel from giving his opinion concerning what
constituted reasonable doubt in a statement that closely mirrored the Geesa instruction. We
find that the court did not abuse its discretion. Issue No. One is overruled. 

 In Issue No. Two, Appellant asserts that the State failed to produce complete video
records of the day of the offense for inspection by the defense thereby violating Brady v.
Maryland. (2) Specifically, Appellant contends that the complete recordings taken during the
day of the offense were not provided to her, and the State failed to secure or procure the tape
recordings. 

 Appellant filed motions requesting a copy of the surveillance video showing the
offense as well as a copy of the video in VHS format. The court signed orders granting
Appellant's request, and ordered the State to provide such copies six days prior to trial, and
to allow Appellant to inspect any video tapes in the State's possession. 

 At trial, after jury selection, Appellant objected because the surveillance recordings
were provided in the form of a high density CD which she had no way to view. Further, she
objected because the VHS video provided was not an exact duplicate. The State responded
that both copies had been turned over to Appellant, and that when the CD was converted to
VHS, portions of that tape were out of sequence with the CD due to the computerized format
of the CD. It was established that Appellant had received both copies and that defense
counsel had been allowed to view the CD video. After viewing both the CD and the VHS
tape, the court overruled Appellant's objection.

 Ricardo Rodriguez, the camera monitor, testified that the surveillance cameras run
continuously but they only record when the operator pushes the record button. The four
cameras involved would have run for a total of ninety-six hours. The CD recording consisted
of only twelve minutes out of the entire ninety-six hours. Rodriguez testified that he did not
leave out any video of Appellant while she was in the store. He attempted to find the video
footage of when she entered the store but was unable to find any such footage. Rodriguez
stated that the cameras rotate 360 degrees, and it was possible that when Appellant entered
the store the cameras were not pointed in her direction. Scott McMurtrie, the operations
manager at the store also testified that he reviewed the taped footage and there was no
videotape showing Appellant walking into the store. 

 A prosecutor is under an affirmative duty to disclose exculpatory evidence that is
material to the defendant's guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct.
1194, 10 L.Ed. 2d 215 (1963). A due process violation occurs if: (1) the prosecutor fails to
disclose evidence; (2) the evidence is favorable to the defendant; and (3) the evidence is
material to the accused's defense. Id. at 87; Little v. State, 991 S.W.2d 864, 866 (Tex. Crim.
App. 1994). In the present case, Appellant has failed to establish that there was a failure to
disclose evidence. The testimony indicated that there was no footage of Appellant entering
the store, and the tape and CD contained all the footage that was available of Appellant's
activities in the store.

 Appellant also asserts that the State failed to secure or procure the requested taped
footage. In order to show a due process violation from the loss or the failure to procure
evidence, the defendant must show that: (1) the lost evidence was material; (2) the lost
evidence was favorable to the defense; and (3) the evidence was lost or destroyed in bad faith
by the State. Lee v. State, 893 S.W.2d 80, 86-87 (Tex. App.--El Paso 1994, no pet.). A
showing that the evidence would have been potentially useful to the defense is not sufficient
meet the materiality test. Johnson v. State, 913 S.W.2d 736, 738 (Tex. App.--Waco 1996,
no pet.). 


 Appellant has failed to demonstrate that the requested taped footage exists. 
Furthermore, Appellant posits suggestions merely that the evidence might have been
exculpatory. Appellant had failed to meet her burden. Accordingly, Issue No. Two is
overruled.

 In Issue No. Three, Appellant contends that counsel for the State committed
prosecutorial misconduct. During the State's examination of Sergeant Medina, he testified
that Liliana Deanda questioned Appellant and he overheard her response to Deanda's
questioning. Appellant objected asserting that the State was committing prosecutorial
misconduct as there had been a prior agreement that the State would not elicit the statements
from its witnesses, and that the statements were hearsay. The court found that no such
agreement had existed and overruled Appellant's objections. 

 Prosecutorial misconduct can be established where: (1) the prosecutor's actions
deliberately violated an express court order; and (2) the prosecutor's misconduct was so
blatant as to border on being contumacious. Perkins v. State, 902 S.W.2d 88, 96 (Tex. App.--
El Paso), Supplemented, 905 S.W.2d 452 (Tex. App.--El Paso 1995, no pet.). Misconduct
can also be shown when a prosecutor asks a question that is clearly calculated to inflame the
minds of the jury and is of such a character so as to suggest the impossibility of withdrawing
the impression produced. See id. at 96. 

 It is clear from the record that the prosecutor did not violate an express court order
given the court's ruling about the non-existence of the prior agreement and the admissibility
of the statement. Furthermore, during the hearing on the admissibility of the statement, the
prosecutor cited Inman v. State, 683 S.W.2d 40, 41-42 (Tex. App.-- Eastland 1984, no pet.)
to the court; a case holding that an oral statement made by an accused in response to
questioning by a non-police officer, even in the presence of other police officers, is not the
product of custodial interrogation and an officer may testify to the overheard conversation.
Appellant has failed to demonstrate that prosecutorial misconduct occurred. Issue No. Three
is overruled.

 In Issue No. Four, Appellant argues that the evidence is factually insufficient to
support the conviction. When conducting a factual sufficiency review, we consider all of the
evidence but we do not view it in the light most favorable to the verdict. Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996); Levario v. State, 964 S.W.2d 290, 295 (Tex. App.--El Paso 1997, no pet.). We review the evidence weighed by the fact finder that tends to
prove the existence of the elemental fact in dispute and compare it with the evidence that
tends to disprove that fact. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct.
100, 139 L.Ed.2d 54 (1997). A defendant challenging the factual sufficiency of the evidence
may allege that the evidence is so weak as to be clearly wrong and manifestly unjust, or in
a case where the defendant has offered contrary evidence, he may argue that the finding of
guilt is against the great weight and preponderance of the evidence. See Johnson, 23 S.W.3d
at 11. Although we are authorized to set aside the fact finder's determination under either of
these two circumstances, our review must employ appropriate deference and should not
intrude upon the fact finder's role as the sole judge of the weight and credibility given to any
evidence presented at trial. See Johnson, 23 S.W.3d at 7. We are not free to reweigh the
evidence and set aside a verdict merely because we feel that a different result is more
reasonable. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d
at 135. 

 Appellant's defense seemed, impliedly, to center around the contention that Appellant
had purchased the skirt suit elsewhere, either in Las Vega, Phoenix, or Dallas, or had mail
ordered the suit from one of those locations. Appellant suggests that she brought the garment
into the store to see how other clothing items would match with the suit. However, all these
contentions were rebutted by the State when it demonstrated that no garment of the type
found in Appellant's possession was sold or even existed at the mentioned locations. 
Furthermore, it was rational for the jury to believe that Appellant engaged in various
subterfuges such as requesting the receipt after the incident at the store, in order to fabricate
a defense. Accordingly, we find that the evidence is factually sufficient. Issue No. Four is
overruled.

 In Issue No. Five, Appellant asserts that the State committed prosecutorial misconduct
by making improper arguments by alluding to Appellant's failure to testify. During closing
argument, the prosecutor stated that Appellant had failed to bring forth facts that would allow
them to find the sale of the garment. Appellant objected that the argument shifted the burden
of proof and violated his fifth amendment privilege. 

 A trial objection that does not specifically raise the issue of prosecutorial misconduct
does not preserve that issue for appellate review. Perkins, 902 S.W.2d at 96. Appellant
failed to object on that ground; he has failed to preserve the issue for review. Issue No. Five
is overruled. 

 Having overruled each of Appellant's issues on review, we affirm the judgment of the
trial court.

September 10, 2004


 RICHARD BARAJAS, Chief Justice


Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.


(Do Not Publish)
1. Beginning in 1991, a trial court was required to define "reasonable doubt" in the jury charge. Geesa v.
State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991). The charge required by Geesa stated in relevant part: 

 A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial
consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person
hesitate to act in the most important of his own affairs. 

 Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be
willing to rely and act upon it without hesitation in the most important of your own affairs. 

 Nine years later, the Court of Criminal Appeals overruled that portion of Geesa requiring the definition. 
The court held that "the better practice is to give no definition of reasonable doubt at all to the jury." Paulson v.
State, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). In Paulson, it was noted that, in looking at the entire definition,
the first definition was useless and that the second definition was ambiguous. Id. at 572. Further, the third definition
was a fallacious application of the second definition. Id. 
2. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).